# IOWA *v.* TOVAR

No. 02–1541.   Argued January 21, 2004—Decided March 8, 2004

78

*Thomas J. Miller,* Attorney General of Iowa, argued the cause for petitioner. With him on the briefs were *Douglas R. Marek,* Deputy Attorney General, and *Darrel Mullins,* Assistant Attorney General.

*Malcolm L. Stewart* argued the cause for the United States as *amicus curiae* urging reversal. With him on the brief were *Solicitor General Olson, Assistant Attorney General Wray,* and *Deputy Solicitor General Dreeben.*

*Theresa R. Wilson,* Iowa State Assistant Appellate Defender, argued the cause and filed a brief for respondent.*

JUSTICE GINSBURG delivered the opinion of the Court.

The Sixth Amendment safeguards to an accused who faces incarceration the right to counsel at all critical stages of the

---

*Briefs of *amici curiae* urging reversal were filed for the State of Colorado et al. by *Ken Salazar,* Attorney General of Colorado, *Alan Gilbert,* Solicitor General, *John D. Seidel,* Assistant Attorney General, *Gene C. Schaerr,* and *Robert Klinck,* by *Christopher L. Morano,* Chief State's Attorney of Connecticut, and by the Attorneys General for their respective States as follows: *Bill Pryor* of Alabama, *Gregg D. Renkes* of Alaska, *Bill Lockyer* of California, *Charles J. Crist* of Florida, *Mark J. Bennett* of Hawaii, *Lawrence G. Wasden* of Idaho, *Lisa Madigan* of Illinois, *Steve Carter* of Indiana, *Phill Kline* of Kansas, *Richard P. Ieyoub* of Louisiana, *G. Steven Rowe* of Maine, *Thomas F. Reilly* of Massachusetts, *Michael C. Moore* of Mississippi, *Jeremiah W. (Jay) Nixon* of Missouri, *Mike McGrath* of Montana, *Jon Bruning* of Nebraska, *Brian Sandoval* of Nevada, *Patricia A. Madrid* of New Mexico, *Wayne Stenehjem* of North Dakota, *Jim Petro* of Ohio, *W. A. Drew Edmondson* of Oklahoma, *Hardy Myers* of Oregon, *Henry D. McMaster* of South Carolina, *Lawrence E. Long* of South Dakota, *Greg Abbott* of Texas, *Mark L. Shurtleff* of Utah, *William H. Sorrell* of Vermont, *Jerry W. Kilgore* of Virginia, *Darrell V. McGraw, Jr.,* of West Virginia, and *Patrick J. Crank* of Wyoming; and for the National District Attorneys Association by *Stephanos Bibas* and *James D. Polley IV.*

Briefs of *amici curiae* urging affirmance were filed for the National Association of Criminal Defense Lawyers by *Steven Duke* and *Lisa Kemler;* and for the National Legal Aid & Defender Association et al. by *Andrea D. Lyon, Emily Hughes, Steven A. Greenberg,* and *Robert R. Rigg.*

criminal process. *Maine* v. *Moulton,* 474 U. S. 159, 170 (1985); *United States* v. *Wade,* 388 U. S. 218, 224 (1967). The entry of a guilty plea, whether to a misdemeanor or a felony charge, ranks as a "critical stage" at which the right to counsel adheres. *Argersinger* v. *Hamlin,* 407 U. S. 25, 34 (1972); *White* v. *Maryland,* 373 U. S. 59, 60 (1963) *(per curiam).* Waiver of the right to counsel, as of constitutional rights in the criminal process generally, must be a "knowing, intelligent ac[t] done with sufficient awareness of the relevant circumstances." *Brady* v. *United States,* 397 U. S. 742, 748 (1970). This case concerns the extent to which a trial judge, before accepting a guilty plea from an uncounseled defendant, must elaborate on the right to representation.

Beyond affording the defendant the opportunity to consult with counsel prior to entry of a plea and to be assisted by counsel at the plea hearing, must the court, specifically: (1) advise the defendant that "waiving the assistance of counsel in deciding whether to plead guilty [entails] the risk that a viable defense will be overlooked"; and (2) "admonis[h]" the defendant "that by waiving his right to an attorney he will lose the opportunity to obtain an independent opinion on whether, under the facts and applicable law, it is wise to plead guilty"? 656 N. W. 2d 112, 121 (Iowa 2003). The Iowa Supreme Court held both warnings essential to the "knowing and intelligent" waiver of the Sixth Amendment right to the assistance of counsel. *Ibid.*

We hold that neither warning is mandated by the Sixth Amendment. The constitutional requirement is satisfied when the trial court informs the accused of the nature of the charges against him, of his right to be counseled regarding his plea, and of the range of allowable punishments attendant upon the entry of a guilty plea.

## I

On November 2, 1996, respondent Felipe Edgardo Tovar, then a 21-year-old college student, was arrested in Ames,

Iowa, for operating a motor vehicle while under the influence of alcohol (OWI). See Iowa Code § 321J.2 (1995).[1] An intoxilyzer test administered the night of Tovar's arrest showed he had a blood alcohol level of 0.194. App. 24. The arresting officer informed Tovar of his rights under *Miranda* v. *Arizona*, 384 U. S. 436 (1966). Tovar signed a form stating that he waived those rights and agreed to answer questions. Iowa State Univ. Dept. of Public Safety, OWI Supplemental Report 3 (Nov. 2, 1996), Lodging of Petitioner; Iowa State Univ. Dept. of Public Safety, Rights Warnings (Nov. 2, 1996), Lodging of Petitioner.

Some hours after his arrest, Tovar appeared before a judge in the Iowa District Court for Story County. The judge indicated on the initial appearance form that Tovar appeared without counsel and waived application for court-appointed counsel. Initial Appearance in No. OWCR 23989 (Nov. 2, 1996), Lodging of Petitioner. The judge also marked on the form's checklist that Tovar was "informed of the charge and his . . . rights and receive[d] a copy of the Complaint." *Ibid.* Arraignment was set for November 18, 1996. In the interim, Tovar was released from jail.

At the November 18 arraignment,[2] the court's inquiries of Tovar began: "Mr. Tovar appears without counsel and I see, Mr. Tovar, that you waived application for a court appointed attorney. Did you want to represent yourself at today's hearing?" App. 8–9. Tovar replied: "Yes, sir." *Id.*, at 9. The court soon after asked: "[H]ow did you wish to plead?" Tovar answered: "Guilty." *Ibid.* Tovar affirmed that he

---

[1] "A person commits the offense of operating while intoxicated if the person operates a motor vehicle in this state in either of the following conditions: *a.* While under the influence of an alcoholic beverage . . . . *b.* While having an alcohol concentration . . . of .10 or more." Iowa Code § 321J.2(1) (1995).

[2] Tovar appeared in court along with four other individuals charged with misdemeanor offenses. App. 6–10. The presiding judge proposed to conduct the plea proceeding for the five cases jointly, and each of the individuals indicated he did not object to that course of action. *Id.*, at 11.

had not been promised anything or threatened in any way to induce him to plead guilty. *Id.*, at 13–14.

Conducting the guilty plea colloquy required by the Iowa Rules of Criminal Procedure, see Iowa Rule Crim. Proc. 8 (1992),[3] the court explained that, if Tovar pleaded not guilty, he would be entitled to a speedy and public trial by jury, App. 15, and would have the right to be represented at that trial by an attorney, who "could help [Tovar] select a jury, question and cross-examine the State's witnesses, present evidence, if any, in [his] behalf, and make arguments to the judge and jury on [his] behalf," *id.*, at 16. By pleading guilty, the court cautioned, "not only [would Tovar] give up [his] right to a trial [of any kind on the charge against him], [he would] give up [his] right to be represented by an attorney at that trial." *Ibid.* The court further advised Tovar that, if he entered a guilty plea, he would relinquish the right to remain silent at trial, the right to the presumption of innocence, and the right to subpoena witnesses and compel their testimony. *Id.*, at 16–19.

Turning to the particular offense with which Tovar had been charged, the court informed him that an OWI conviction carried a maximum penalty of a year in jail and a $1,000 fine, and a minimum penalty of two days in jail and a $500 fine. *Id.*, at 20. Tovar affirmed that he understood his exposure to those penalties. *Ibid.* The court next explained that, before accepting a guilty plea, the court had to assure itself that Tovar was in fact guilty of the charged offense. *Id.*, at 21–22. To that end, the court informed Tovar that the OWI charge had only two elements: first, on the date in question, Tovar was operating a motor vehicle in the State of Iowa; second, when he did so, he was intoxicated. *Id.*, at 23. Tovar confirmed that he had been driving in Ames, Iowa, on the night he was apprehended and that he did not dispute the results of the intoxilyzer test administered by

---

[3] The Rule has since been renumbered 2.8.

the police that night, which showed that his blood alcohol level exceeded the legal limit nearly twice over. *Id.*, at 23–24.

After the plea colloquy, the court asked Tovar if he still wished to plead guilty, and Tovar affirmed that he did. *Id.*, at 27–28. The court then accepted Tovar's plea, observing that there was "a factual basis" for it, and that Tovar had made the plea "voluntarily, with a full understanding of [his] rights, [and] . . . of the consequences of [pleading guilty]." *Id.*, at 28.

On December 30, 1996, Tovar appeared for sentencing on the OWI charge[4] and, simultaneously, for arraignment on a subsequent charge of driving with a suspended license. *Id.*, at 45–46; see Iowa Code § 321J.21 (1995).[5] Noting that Tovar was again in attendance without counsel, the court inquired: "Mr. Tovar, did you want to represent yourself at today's hearing or did you want to take some time to hire an attorney to represent you?" App. 46.[6] Tovar replied that he would represent himself. *Ibid.* The court then engaged in essentially the same plea colloquy on the suspension charge as it had on the OWI charge the previous month. *Id.*, at 48–51. After accepting Tovar's guilty plea on the suspension charge, the court sentenced him on both counts: For the OWI conviction, the court imposed the minimum sentence of two days in jail and a $500 fine, plus a surcharge and

---

[4] At that stage, it was still open to Tovar to request withdrawal of his guilty plea on the OWI charge and to substitute a plea of not guilty. See Iowa Rule Crim. Proc. 8(2)(a) (1992).

[5] In order to appear at the OWI arraignment, Tovar drove to the courthouse despite the suspension of his license; he was apprehended en route home. App. 50, 53.

[6] Prior to asking Tovar whether he wished to hire counsel, the court noted that Tovar had applied for a court-appointed attorney but that his application had been denied because he was financially dependent upon his parents. *Id.*, at 46. Tovar does not here challenge the absence of counsel at sentencing.

costs; for the suspension conviction, the court imposed a $250 fine, plus a surcharge and costs. *Id.*, at 55.

On March 16, 1998, Tovar was convicted of OWI for a second time. He was represented by counsel in that proceeding, in which he pleaded guilty. Record 60; see App. to Pet. for Cert. 24, n. 1.

On December 14, 2000, Tovar was again charged with OWI, this time as a third offense, see Iowa Code § 321J.2 (1999), and additionally with driving while license barred, see § 321.561. Iowa law classifies first-offense OWI as a serious misdemeanor and second-offense OWI as an aggravated misdemeanor. §§ 321J.2(2)*(a)–(b)*. Third-offense OWI, and any OWI offenses thereafter, rank as class "D" felonies. § 321J.2(2)*(c)*. Represented by an attorney, Tovar pleaded not guilty to both December 2000 charges. Record 55.

In March 2001, through counsel, Tovar filed a motion for adjudication of law points;[7] the motion urged that Tovar's first OWI conviction, in 1996, could not be used to enhance the December 2000 OWI charge from a second-offense aggravated misdemeanor to a third-offense felony. App. 3–5.[8] Significantly, Tovar did not allege that he was unaware at the November 1996 arraignment of his right to counsel prior to pleading guilty and at the plea hearing. Instead, he maintained that his 1996 waiver of counsel was invalid—not "full knowing, intelligent, and voluntary"—because he "was never made aware by the court . . . of the dangers and disadvantages of self-representation." *Id.*, at 3–4.

---

[7] See Iowa Rule Crim. Proc. 10(2) (1992) ("Any defense, objection, or request which is capable of determination without the trial of the general issue may be raised before trial by motion."); *State* v. *Wilt*, 333 N. W. 2d 457, 460 (Iowa 1983) (approving use of motions for adjudication of law points under Iowa Rule of Criminal Procedure 10(2) where material facts are undisputed).

[8] Tovar conceded that the 1998 OWI conviction could be used for enhancement purposes. Record 60.

The court denied Tovar's motion in May 2001, explaining: "Where the offense is readily understood by laypersons and the penalty is not unduly severe, the duty of inquiry which is imposed upon the court is only that which is required to assure an awareness of [the] right to counsel and a willingness to proceed without counsel in the face of such awareness." App. to Pet. for Cert. 36–37 (brackets in original). Tovar then waived his right to a jury trial and was found guilty by the court of both the OWI third-offense charge and driving while license barred. *Id.*, at 33. Four months after that adjudication, Tovar was sentenced. On the OWI third-offense charge, he received a 180-day jail term, with all but 30 days suspended, three years of probation, and a $2,500 fine plus surcharges and costs. App. 70–71. For driving while license barred, Tovar received a 30-day jail term, to run concurrently with the OWI sentence, and a suspended $500 fine. *Id.*, at 71.

The Iowa Court of Appeals affirmed, App. to Pet. for Cert. 23–30, but the Supreme Court of Iowa, by a 4-to-3 vote, reversed and remanded for entry of judgment without consideration of Tovar's first OWI conviction, 656 N. W. 2d 112 (2003). Iowa's highest court acknowledged that "the dangers of proceeding pro se at a guilty plea proceeding will be different than the dangers of proceeding pro se at a jury trial, [therefore] the inquiries made at these proceedings will also be different." *Id.*, at 119. The court nonetheless held that the colloquy preceding acceptance of Tovar's 1996 guilty plea had been constitutionally inadequate, and instructed dispositively:

> "[A] defendant such as Tovar who chooses to plead guilty without the assistance of an attorney must be advised of the usefulness of an attorney and the dangers of self-representation in order to make a knowing and intelligent waiver of his right to counsel. . . . [T]he trial judge [must] advise the defendant generally that there are defenses to criminal charges that may not be known by

laypersons and that the danger in waiving the assistance
of counsel in deciding whether to plead guilty is the risk
that a viable defense will be overlooked. The defendant
should be admonished that by waiving his right to an
attorney he will lose the opportunity to obtain an inde-
pendent opinion on whether, under the facts and applica-
ble law, it is wise to plead guilty. In addition, the court
must ensure the defendant understands the nature of
the charges against him and the range of allowable pun-
ishments." *Id.*, at 121.[9]

We granted certiorari, 539 U. S. 987 (2003), in view of the
division of opinion on the requirements the Sixth Amend-
ment imposes for waiver of counsel at a plea hearing, com-
pare, *e. g., United States* v. *Akins,* 276 F. 3d 1141, 1146–1147
(CA9 2002), with *State* v. *Cashman,* 491 N. W. 2d 462, 465–
466 (S. D. 1992), and we now reverse the judgment of the
Iowa Supreme Court.

## II

The Sixth Amendment secures to a defendant who faces
incarceration the right to counsel at all "critical stages" of
the criminal process. See, *e. g., Maine* v. *Moulton,* 474 U. S.,
at 170; *United States* v. *Wade,* 388 U. S., at 224. A plea hear-
ing qualifies as a "critical stage." *White* v. *Maryland,* 373
U. S., at 60. Because Tovar received a two-day prison term
for his 1996 OWI conviction, he had a right to counsel both
at the plea stage and at trial had he elected to contest the
charge. *Argersinger* v. *Hamlin,* 407 U. S., at 34, 37.

A person accused of crime, however, may choose to forgo
representation. While the Constitution "does not force a

---

[9] The dissenting justices criticized the majority's approach as "rigid" and
out of line with the pragmatic approach this Court described in *Patterson*
v. *Illinois,* 487 U. S. 285, 298 (1988). 656 N. W. 2d, at 122. They noted
that, in addition to advice concerning the constitutional rights a guilty
plea relinquishes, Tovar was "made fully aware of the penal consequences
that might befall him if he went forward without counsel and pleaded
guilty." *Ibid.*

lawyer upon a defendant," *Adams* v. *United States ex rel. McCann,* 317 U. S. 269, 279 (1942), it does require that any waiver of the right to counsel be knowing, voluntary, and intelligent, see *Johnson* v. *Zerbst,* 304 U. S. 458, 464 (1938). Tovar contends that his waiver of counsel in November 1996, at his first OWI plea hearing, was insufficiently informed, and therefore constitutionally invalid. In particular, he asserts that the trial judge did not elaborate on the value, at that stage of the case, of an attorney's advice and the dangers of self-representation in entering a plea. Brief for Respondent 15.[10]

We have described a waiver of counsel as intelligent when the defendant "knows what he is doing and his choice is made with eyes open." *Adams,* 317 U. S., at 279. We have not, however, prescribed any formula or script to be read to a defendant who states that he elects to proceed without counsel. The information a defendant must possess in order to make an intelligent election, our decisions indicate, will depend on a range of case-specific factors, including the defendant's education or sophistication, the complex or easily grasped nature of the charge, and the stage of the proceeding. See *Johnson,* 304 U. S., at 464.

As to waiver of trial counsel, we have said that before a defendant may be allowed to proceed *pro se,* he must be

---

[10] The United States as *amicus curiae* reads our decision in *Scott* v. *Illinois,* 440 U. S. 367 (1979), to hold that a constitutionally defective waiver of counsel in a misdemeanor prosecution, although warranting vacation of any term of imprisonment, affords no ground for disturbing the underlying conviction. *Amicus* accordingly contends that the Constitution should not preclude use of an uncounseled misdemeanor conviction to enhance the penalty for a subsequent offense, regardless of the validity of the prior waiver. See Brief for United States as *Amicus Curiae* 11, n. 3. The State, however, does not contest the Iowa Supreme Court's determination that a conviction obtained without an effective waiver of counsel cannot be used to enhance a subsequent charge. See *ibid.* We therefore do not address arguments *amicus* advances questioning that premise. See also *id.,* at 29, n. 12.

warned specifically of the hazards ahead. *Faretta* v. *California*, 422 U. S. 806 (1975), is instructive. The defendant in *Faretta* resisted counsel's aid, preferring to represent himself. The Court held that he had a constitutional right to self-representation. In recognizing that right, however, we cautioned: "Although a defendant need not himself have the skill and experience of a lawyer in order competently and intelligently to choose self-representation, he should be made aware of the dangers and disadvantages of self-representation, so that the record will establish that he knows what he is doing . . . ." *Id.*, at 835 (internal quotation marks omitted).

Later, in *Patterson* v. *Illinois*, 487 U. S. 285 (1988), we elaborated on "the dangers and disadvantages of self-representation" to which *Faretta* referred. "[A]t trial," we observed, "counsel is required to help even the most gifted layman adhere to the rules of procedure and evidence, comprehend the subtleties of *voir dire*, examine and cross-examine witnesses effectively . . . , object to improper prosecution questions, and much more." 487 U. S., at 299, n. 13. Warnings of the pitfalls of proceeding to trial without counsel, we therefore said, must be "rigorous[ly]" conveyed. *Id.*, at 298. We clarified, however, that at earlier stages of the criminal process, a less searching or formal colloquy may suffice. *Id.*, at 299.

*Patterson* concerned postindictment questioning by police and prosecutor. At that stage of the case, we held, the warnings required by *Miranda* v. *Arizona*, 384 U. S. 436 (1966), adequately informed the defendant not only of his Fifth Amendment rights, but of his Sixth Amendment right to counsel as well. 487 U. S., at 293. *Miranda* warnings, we said, effectively convey to a defendant his right to have counsel present during questioning. In addition, they inform him of the "ultimate adverse consequence" of making uncounseled admissions, *i. e.*, his statements may be used against him in any ensuing criminal proceeding. 487 U. S.,

at 293. The *Miranda* warnings, we added, "also sufficed . . . to let [the defendant] know what a lawyer could 'do for him,'" namely, advise him to refrain from making statements that could prove damaging to his defense. 487 U. S., at 294.

*Patterson* describes a "pragmatic approach to the waiver question," one that asks "what purposes a lawyer can serve at the particular stage of the proceedings in question, and what assistance he could provide to an accused at that stage," in order "to determine the scope of the Sixth Amendment right to counsel, and the type of warnings and procedures that should be required before a waiver of that right will be recognized." *Id.*, at 298. We require less rigorous warnings pretrial, *Patterson* explained, not because pretrial proceedings are "less important" than trial, but because, at that stage, "the full dangers and disadvantages of self-representation . . . are less substantial and more obvious to an accused than they are at trial." *Id.*, at 299 (citation and internal quotation marks omitted).

In Tovar's case, the State maintains that, like the *Miranda* warnings we found adequate in *Patterson*, Iowa's plea colloquy suffices both to advise a defendant of his right to counsel, and to assure that his guilty plea is informed and voluntary. Brief for Petitioner 20; Tr. of Oral Arg. 3. The plea colloquy, according to the State, "makes plain that an attorney's role would be to challenge the charge or sentence," and therefore adequately conveys to the defendant both the utility of counsel and the dangers of self-representation. Brief for Petitioner 25. Tovar, on the other hand, defends the precise instructions required by the Iowa Supreme Court, see *supra*, at 86–87, as essential to a knowing, voluntary, and intelligent plea stage waiver of counsel. Brief for Respondent 15.

To resolve this case, we need not endorse the State's position that nothing more than the plea colloquy was needed to safeguard Tovar's right to counsel. Preliminarily, we note that there were some things more in this case. Tovar first

indicated that he waived counsel at his initial appearance, see *supra*, at 82, affirmed that he wanted to represent himself at the plea hearing, see *supra*, at 82, and declined the court's offer of "time to hire an attorney" at sentencing, when it was still open to him to request withdrawal of his plea, see *supra*, at 84, and n. 4. Further, the State does not contest that a defendant must be alerted to his right to the assistance of counsel in entering a plea. See Brief for Petitioner 19 (acknowledging defendant's need to know "retained or appointed counsel can assist" at the plea stage by "work[ing] on the issues of guilt and sentencing"). Indeed, the Iowa Supreme Court appeared to assume that Tovar was informed of his entitlement to counsel's aid or, at least, to have pretermitted that issue. See 656 N. W. 2d, at 117. Accordingly, the State presents a narrower question: "Does the Sixth Amendment require a court to give a rigid and detailed admonishment to a *pro se* defendant pleading guilty of the usefulness of an attorney, that an attorney may provide an independent opinion whether it is wise to plead guilty and that without an attorney the defendant risks overlooking a defense?" Pet. for Cert. i.

Training on that question, we turn to, and reiterate, the particular language the Iowa Supreme Court employed in announcing the warnings it thought the Sixth Amendment required: "[T]he trial judge [must] advise the defendant generally that there are defenses to criminal charges that may not be known by laypersons and that the danger in waiving the assistance of counsel in deciding whether to plead guilty is the risk that a viable defense will be overlooked," 656 N. W. 2d, at 121; in addition, "[t]he defendant should be admonished that by waiving his right to an attorney he will lose the opportunity to obtain an independent opinion on whether, under the facts and applicable law, it is wise to plead guilty," *ibid.* Tovar did not receive such advice, and the sole question before us is whether the Sixth Amendment

compels the two admonitions here in controversy.[11]  We hold it does not.

This Court recently explained, in reversing a lower court determination that a guilty plea was not voluntary: "[T]he law ordinarily considers a waiver knowing, intelligent, and sufficiently aware if the defendant fully understands the nature of the right and how it would likely apply *in general* in the circumstances—even though the defendant may not know the *specific detailed* consequences of invoking it." *United States* v. *Ruiz,* 536 U. S. 622, 629 (2002) (emphasis in original).  We similarly observed in *Patterson:* "If [the defendant] . . . lacked a full and complete appreciation of all of the consequences flowing from his waiver, it does not defeat the State's showing that the information it provided to him satisfied the constitutional minimum."  487 U. S., at 294 (internal quotation marks omitted).  The Iowa Supreme Court gave insufficient consideration to these guiding decisions.  In prescribing scripted admonitions and holding them necessary in every guilty plea instance, we further note, the Iowa high court overlooked our observations that the information a defendant must have to waive counsel intelligently will "depend, in each case, upon the particular facts and circumstances surrounding that case," *Johnson,* 304 U. S., at 464; *supra,* at 88.

Moreover, as Tovar acknowledges, in a collateral attack on an uncounseled conviction, it is the defendant's burden to prove that he did not competently and intelligently waive his right to the assistance of counsel.  See *Watts* v. *State,* 257 N. W. 2d 70, 71 (Iowa 1977); Brief for Respondent 5, 26–27.  In that light, we note that Tovar has never claimed that he did not fully understand the charge or the range of punishment for the crime prior to pleading guilty.  Further, he has

---

[11] The Supreme Court of Iowa also held that "the court must ensure the defendant understands the nature of the charges against him and the range of allowable punishments."  656 N. W. 2d, at 121.  The parties do not dispute that Tovar was so informed.

never "articulate[d] with precision" the additional information counsel could have provided, given the simplicity of the charge. See *Patterson*, 487 U. S., at 294; *supra*, at 83. Nor does he assert that he *was* unaware of his right to be counseled prior to and at his arraignment. Before this Court, he suggests only that he *"may have been* under the mistaken belief that he had a right to counsel at trial, but not if he was merely going to plead guilty." Brief for Respondent 16 (emphasis added).[12]

Given "the particular facts and circumstances surrounding [this] case," see *Johnson*, 304 U. S., at 464, it is far from clear that warnings of the kind required by the Iowa Supreme Court would have enlightened Tovar's decision whether to seek counsel or to represent himself. In a case so straightforward, the United States as *amicus curiae* suggests, the admonitions at issue might confuse or mislead a defendant more than they would inform him: The warnings the Iowa Supreme Court declared mandatory might be misconstrued as a veiled suggestion that a meritorious defense exists or that the defendant could plead to a lesser charge, when neither prospect is a realistic one. If a defendant delays his plea in the vain hope that counsel could uncover a tenable basis for contesting or reducing the criminal charge, the prompt disposition of the case will be impeded, and the resources of either the State (if the defendant is indigent) or the defendant himself (if he is financially ineligible for appointed counsel) will be wasted. Brief for United States as *Amicus Curiae* 9, 28–29; Tr. of Oral Arg. 20–21.

---

[12] The trial court's comment that Tovar appeared without counsel at the arraignment and the court's inquiry whether Tovar wanted to represent himself at that hearing, see App. 8–9, hardly lend support to Tovar's suggestion of what he "may have" believed. See also *id.*, at 46 (court's inquiry at sentencing whether Tovar "want[ed] to take some time to hire an attorney"); Iowa Rule Crim. Proc. 8(2)(a) (1992) ("[a]t any time before judgment," defendant may request withdrawal of guilty plea and substitution of not guilty plea).

94

We note, finally, that States are free to adopt by statute, rule, or decision any guides to the acceptance of an uncounseled plea they deem useful. See, *e. g.,* Alaska Rule Crim. Proc. 39(a) (2003); Fla. Rule Crim. Proc. 3.111(d) (2003); Md. Ct. Rule 4–215 (2002); Minn. Rule Crim. Proc. 5.02 (2003); Pa. Rule Crim. Proc. 121, *comment* (2003). We hold only that the two admonitions the Iowa Supreme Court ordered are not required by the Federal Constitution.

\*　\*　\*

For the reasons stated, the judgment of the Supreme Court of Iowa is reversed, and the case is remanded for further proceedings not inconsistent with this opinion.

*It is so ordered.*