# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

———————

No. 04-2339

———————

Harold Leroy Page,

        Appellant,

v.

Ken Burger, Warden,

        Appellee.

\*
\*
\*
\*
\*   Appeal from the United States
\*   District Court for the
\*   Southern District of Iowa.
\*
\*
\*

———————

Submitted: February 16, 2005
Filed: May 2, 2005

———————

Before LOKEN, Chief Judge, RILEY, and SMITH, Circuit Judges.

———————

SMITH, Circuit Judge.

Harold Leroy Page was convicted by an Iowa jury of first-degree murder and first-degree robbery. After the Iowa Courts affirmed his convictions and denied his state application for post-conviction relief, Page filed a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254 in the United States District Court.[1] The district court denied Page's petition for habeas relief, but issued a certificate of appealability pursuant to 28 U.S.C. § 2253(c). On appeal, Page contends that he was denied his

———————

[1] The Honorable Harold D. Vietor, United States District Judge for the Southern District of Iowa.

Sixth Amendment right to counsel by the Iowa state court when the court granted his request to represent himself without a sufficient warning of the ramifications of his choice. We find no error and affirm.

## I. *Background*

Page robbed and fatally shot Daniel Zenor in Zenor's home. Page was charged with first-degree murder and first-degree robbery. Prior to trial, Page attempted to waive his Sixth Amendment right to counsel and proceed *pro se*. The Iowa state trial court allowed Page to proceed *pro se* but appointed him standby counsel, Tom Isaac. The following heated colloquy took place:

> THE COURT: All right. Mr. Page, you are the same Mr. Harold Page that plead in court two days ago, is that right?
>
> THE DEFENDANT: Yes.
>
> THE COURT: You stated at that time here that Mr. William Garrison is your lawyer.
>
> THE DEFENDANT: I said I would try to hire Mr. Garrison.
>
> THE COURT: So now you said you hired him?
>
> THE DEFENDANT: Don't tell me what I said. Don't tell me what I said. I don't have to lie to you. You are not going to tell me…
>
> THE COURT: You are not the type that would do that.
>
> THE DEFENDANT: No, I don't have to.
>
> THE COURT: Mr. Garrison, would you approach the bench, please? Now, do you know this fellow?
>
> MR. GARRISON: I've never seen Mr. Page in my life, Your Honor.

THE DEFENDANT: Have you talked with my wife?

MR. GARRISON: Yes, I called a lady named Marilyn McGuire.

THE DEFENDANT: That's my wife.

THE COURT: Now, what is your position now, Mr. Page?

THE DEFENDANT: My position is this, Your Honor. You told me yesterday…

THE COURT: No. Just what is your position?

THE DEFENDANT: I'm getting ready to tell you that now.

THE COURT: What is your position?

THE DEFENDANT: What's my position?

THE COURT: Yes.

THE DEFENDANT: Why are you trying to make my arraignment now when it's supposed to be next Friday? I would not have to worry about . . . What is the problem that you keep trying to make me go to arraignment ahead of time? Why? That's my position. What is the problem that you forced me to arraignment now when you told me that you wouldn't bring me back yesterday until next Friday on my regular scheduled date? You said yesterday, "Do not bring Mr. Page back until November 6, 1987, until his arraignment." I would have an attorney by then. I can't understand why you force me to…

THE COURT: Well, we need to have somebody to represent you so we won't waste any more time with you, Mr. Page.

THE DEFENDANT: You can't waste my time. You keep bringing me here for nothing. It's supposed to be next Friday. Why was I here Monday? Why was I here Tuesday? That's all I want to know.

THE COURT: We do like everybody else. We try to hire a lawyer long before your trial date so a lawyer can get together with you on your case. That's our regular procedure whether you like it or not. We have followed this procedure for over 100 years. We are not going to let someone like you change it, you know?

THE DEFENDANT: I can represent myself if I want to.

THE COURT: Of course you can. That's the law. You are smart enough to do it.

THE DEFENDANT: Then why don't you allow me to do it?

THE COURT: You're smart enough to do it. What do you want? Do you want Mr. Garrison as your lawyer? You said you wanted him as a lawyer the other day?

***************

THE COURT: Now, Mr. Page, do you wish at this time to make some arrangements with Mr. Garrison to be hired on a private basis?

THE DEFENDANT: No, I'm representing myself.

THE COURT: Answer my question first. Do you at this time wish to talk to Mr. Garrison about being hired as a private lawyer?

THE DEFENDANT: I did answer your question.

THE COURT: Thank you very much, Mr. Garrison.

MR. GARRISON: If I may be excused then…

THE COURT: Yes, you may be excused. Thank you very much for coming.

MR. GARRISON: Thank you.

-4-

THE COURT: Mr. Page is right. He has a right to represent himself, but the Court is going to appoint Mr. Tom Isaac to at least stand-by whether he opens his mouth or not to have a lawyer by his side so that if he is convicted, he can't say that the Court wasn't willing to hire him a lawyer. So we will appoint one for you. Mr. Tom Isaac will be hired to stand-by you whether you need him or not.

THE DEFENDANT: Now, I may not want a lawyer. I understand he had a right to stand by me.

THE COURT: But that's your problem.

THE DEFENDANT: Of course it's my problem. I don't have no problem.

THE COURT: Of course you don't.

Thereafter, both Page and his appointed standby counsel, Attorney Isaac, filed numerous pretrial motions. During hearings on the pretrial motions, the Iowa state trial court heard arguments from both Page and Attorney Isaac. Attorney Isaac conducted voir dire. Page told the court that he expected Attorney Isaac to cross-examine witnesses at trial. Prior to trial, Attorney Isaac notified the court that Page had requested him to take over the entire trial. When the court attempted to confirm the statement, Page responded that he was "still going to retain [his] *pro se*" status.

Attorney Isaac conducted most of the trial. After voir dire, Attorney Isaac examined nearly all of the witnesses. At times, Page would also ask questions after Attorney Isaac. Attorney Isaac objected during trial, moved for a mistrial, and argued for a judgment of acquittal. Page was convicted and Attorney Isaac filed a motion for new trial and argued for concurrent sentences. The Iowa state trial court sentenced Page to consecutive sentences of life imprisonment for the first-degree murder and twenty-five years' imprisonment for the first-degree robbery.

On direct appeal in Iowa, Page argued that he did not give a valid waiver of his right to counsel and that his *pro se* representation resulted in a deprivation of his Sixth Amendment right to counsel. Based upon its review of the record, the Iowa Court of Appeals ruled that Page was, in fact, properly represented by counsel, and merely served as "co-counsel" to the active representation by Attorney Isaac. On federal habeas, the district court agreed that Page was sufficiently represented by counsel during the trial, but addressed the pre-trial proceedings as if Page only had standby counsel. To that extent, the district court concluded that Page sufficiently understood the nature of his right to representation, and, thus, voluntarily waived his right to pretrial counsel. Nonetheless, the district court issued a certificate of appealability regarding Page's Sixth Amendment claim.[2]

## II. *Discussion*

Under the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), a federal court grants habeas relief if the state court's adjudication "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented." 28 U.S.C. § 2254(d)(1)–(2).[3] Our view that

---

[2]After this case was submitted to the court, Page filed a *pro se* motion to relieve appointed counsel. Apparently, Page is dissatisfied with counsel's handling of his habeas corpus proceedings. Our review shows that counsel has acted with skill and vigor in representing Page. Accordingly, Page's motion to relieve counsel is denied. *See United States v. Knox*, 950 F.2d 516, 521 (8th Cir. 1991) (denying, at oral argument, *pro se* motion to remove appellate attorney filed on the eve of oral argument).

[3]The district court concluded that, while Page properly presented a Sixth Amendment claim regarding both trial and pretrial proceedings, the Iowa Court of Appeals failed to address Page's claim with respect to the pretrial proceedings. Nonetheless, the district court applied the deferential AEDPA standard. When a state court has not addressed an issue, a federal court cannot apply the deferential AEDPA

the state court's application of the law was incorrect or erroneous is insufficient to render it "unreasonable"; rather, it must be objectively unreasonable. *Green v. Norris*, 394 F.3d 1027, 1029 (8th Cir. 2005). A decision is only "contrary to" established Supreme Court precedent when the state court applies a rule that directly contradicts Supreme Court precedent containing "materially indistinguishable" facts. *Id.* (citing *Williams v. Taylor*, 529 U.S. 362, 405 (2000) (O'Connor, J., for the Court)). Accordingly, we must compare the state court decision with applicable Supreme Court precedent.

Page's argument focuses on two United States Supreme Court cases, *Faretta v. California,* 422 U.S. 806 (1975), and *Iowa v. Tovar,* 541 U.S. 77 (2004). In *Farretta*, the Court held that a criminal defendant's Sixth Amendment right to the assistance of counsel includes the related right to waive counsel and conduct his own defense. *Faretta,* 422 U.S. at 807. Nonetheless, before permitting a defendant to exercise his or her constitutional right to proceed *pro se*, the court must be satisfied that the waiver of appointed counsel is knowing and voluntary. *See Godinez v. Moran*, 509 U.S. 389, 400 (1993). More particularly, "any waiver of the right to counsel must be knowing, voluntary, and intelligent." *Tovar*, 541 U.S. at 88.

When a trial court allows a criminal defendant to proceed *pro se* without adequate warnings of the potential consequences, the purported waiver of the right to counsel is invalid. A waiver is valid only if the defendant is "made aware of the dangers and disadvantages of self-representation" at the time of the waiver, "so that

---

standard. *Cox v. Burger*, 398 F.3d 1025, 1029–30 (8th Cir. 2005); *Armstrong v. Kemna*, 365 F.3d 622, 626 (8th Cir. 2004). Regardless, we conclude that the Iowa Court of Appeals did in fact rule that Page was represented by counsel during the pretrial proceedings. The court stated "[Page] was fully represented by attorney Isaac throughout the course of the proceedings." Thus, because the Iowa Court of Appeals addressed Page's claim, the district court properly applied the deferential standard found in the AEDPA.

the record will establish that he knows what he is doing and his choice is made with eyes open." *Faretta v. California*, 422 U.S. at 835 (internal citation omitted). During the pretrial stages of the criminal process, less vigorous warnings are typically adequate because "the full dangers and disadvantages of self-representation . . . are less substantial and more obvious to an accused than they are at trial." *Tovar*, 541 U.S. at 90 (citations omitted). Throughout the waiver inquiry, "[c]ourts must consider the particular facts and circumstances surrounding each case, including the background, experience, and conduct of the accused." *Moore v. United States*, 178 F.3d 994, 998 (8th Cir.1999). The Supreme Court has explained that Miranda warnings are sufficient to explain the dangers of self-representation to a defendant during post-indictment questioning. *Patterson v. Illinois*, 487 U.S. 285, 300 (1988). With regard to a guilty plea, "[t]he constitutional requirement is satisfied when the trial court informs the accused of the nature of the charges against him, of his right to be counseled regarding his plea, and of the range of allowable punishments attendant upon the entry of a guilty plea." *Tovar*, 541 U.S. at 81.

Page's case differs significantly from *Tovar*, which applies where the defendant actually served as his own counsel. As indicated above, the Iowa Court of Appeals concluded that Page was adequately represented by counsel throughout the proceedings because Attorney Isaac actually performed as counsel throughout the proceedings. As such, Page's argument is unpersuasive.[4]

We now address whether the Iowa Court of Appeals decision "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States."

---

[4]We recognize the Supreme Court's holding that the Sixth Amendment "grants to the accused personally the right to make his [or her] defense." *Faretta*, 422 U.S. at 819. Page has never asserted that his *Farretta* right to self-representation was violated; rather, he has argued throughout that he did not voluntarily waive his right to counsel.

28 U.S.C. § 2254(d)(1). "A defendant's Sixth Amendment rights are not violated when a trial judge appoints standby counsel." *McKaskle v. Wiggins*, 465 U.S. 168, 184 (1984). Accordingly, the Iowa state trial court did not infringe Page's Sixth Amendment rights by appointing standby counsel for him. "Once a pro se defendant invites or agrees to any substantial participation by counsel, subsequent appearances by counsel must be presumed to be with the defendant's acquiescence, at least until the defendant expressly and unambiguously renews his request that standby counsel be silenced." *Id.* at 183. The Supreme Court has expressly held that "*Faretta* does not require a trial judge to permit 'hybrid' representation." *Id.*

Here, Page vacillated on self-representation, allowing Attorney Isaac to act as counsel but still attempting to maintain his status as *pro se*. Page acquiesced to Attorney Isaac's substantial pretrial work, including arguing motions and jury selection. In addition, Page wrote a note to Attorney Isaac requesting that Attorney Isaac take over the entire trial. Upon Attorney Isaac's appointment as "standby counsel", Page's commitment to complete self-representation essentially vanished. We have recognized that a trial court may approve hybrid representation—where a defendant essentially acts as co-counsel—but, it is at the trial court's discretion. *United States v. Einfeldt*, 138 F.3d 373, 378 (8th Cir. 1998). The Iowa appellate court held that Page was properly represented by counsel "throughout the course of the proceedings," albeit in a hybrid fashion that permitted Page to inject himself into the questioning.

We share the district court's concern with the particular facts of this case. The state trial judge, rather than warning Page of the dangers of self-representation, in essence, goaded him into representing himself, and then appointed standby counsel. If the facts had ended there this would be a different case entirely. However, the Iowa Court of Appeals decisions that Page vacillated on invoking his *Faretta* rights and that he was effectively represented by Attorney Isaac from the time he was appointed standby counsel is not contrary to, or an unreasonable application of, clearly

established Federal law, as determined by the Supreme Court of the United States. 28 U.S.C. § 2254(d)(1); *Bell v. Cone*, 125 S. Ct. 847, 851 (2005).

For the foregoing reasons, we affirm the district court's decision to dismiss Page's petition for writ of habeas corpus.

_____