## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

May 03 2017, 9:33 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Jacob P. Wahl
Ripstra Law Office
Jasper, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Michael Gene Worden
Deputy Attorney General
Indianapolis, Indiana

IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Corey A. Wharton, <br> *Appellant-Defendant,* <br><br> *v.* <br><br> State of Indiana, <br> *Appellee-Plaintiff.* | May 3, 2017 <br><br> Court of Appeals Case No. 82A05-1609-CR-2244 <br><br> Appeal from the Vanderburgh Circuit Court <br><br> The Hon. David D. Kiely, Judge <br><br> The Hon. Michael J. Cox, Magistrate <br><br> Trial Court Cause No. 82C01-1606-F6-3598 |

**Bradford, Judge.**

# Case Summary

Appellant-Defendant Corey Wharton appeals from his convictions for theft and resisting law enforcement, which arose from an incident where he was observed shoplifting merchandise in an Evansville department store. After being advised of the perils of self-representation, Wharton chose to proceed *pro se*. Wharton consistently advanced the argument that the trial court did not have jurisdiction over him due to his alleged "Moorish" nationality. Wharton represented himself at trial, after which a jury found Wharton guilty of theft and resisting law enforcement, both as Class A misdemeanors. Wharton then pled guilty to the enhanced charge of Level 6 felony theft, and the trial court sentenced him to two years of incarceration for theft and one year for resisting law enforcement, both sentences to be served concurrently in therapeutic work release. Wharton contends that the record establishes that his waiver of counsel was not made voluntarily and intelligently. Because we disagree, we affirm.

# Facts and Procedural History

On the evening of June 17, 2016, Felicia Johnson, a security camera operator at Dillard's department store in Evansville, observed Wharton shoplifting clothing inside the store. Johnson recognized Wharton because he is her first cousin. Johnson notified Evansville Police Officer Stephen Kleeman, then working security part-time for Dillard's, who confronted Wharton. Because Wharton did not cooperate with Officer Kleeman, he called for additional officers.

Wharton remained belligerent when officers attempted to pat him down before placing him in a police cruiser.

[3] On June 21, 2016, the State charged Wharton with Level 6 felony theft and Class A misdemeanor resisting law enforcement. At a hearing on June 30, 2016, Wharton informed the trial court that he intended to represent himself, and the trial court advised him as follows:

> THE COURT: Let me, I have to advise you of the perils of representing yourself, I know we've been through this before, but I want to make a record on this. First of all sir I am advising you that I think it's best if you had an attorney because they have experience that you don't have and the education that you don't have, do you understand that?
>
> THE DEFENDANT: Yes, I do.
>
> THE COURT: And also I'm going to have to hold you at the same standard that I would an attorney when it comes to trial procedure and the trial rules and the evidence rules, do you understand that?
>
> THE DEFENDANT: Yes.
>
> THE COURT: Do you understand you'll be responsible for making arguments, questioning the witnesses, and selecting jurors?
>
> THE DEFENDANT: Yes.
>
> THE COURT: Do you understand that an attorney has experience and trial strategies and (inaudible) that you may not have as far as (inaudible) questions so as not to open the door?
>
> THE DEFENDANT: Yes.
>
> THE COURT: The possible penalties in this case, it's a level 6, 2 ½ years, minimum 6 months, you could be fined up to $10,000 and the Court could enter judgment as an A misdemeanor. On

an A misdemeanor, maximum term 1 year, minimum no time, do you understand the range of penalties that could be imposed?

THE DEFENDANT: Yes.

Tr. Vol. I pp. 4-5.

[4] Wharton then asked permission to address the court:

THE DEFENDANT: Judge, my Honor, with all due respect to this Court and the men and women of the association, bar association of the United States of America, I concede in the name of law justice that I myself cannot be tried in this union states courtroom by said union states, law of land, and I have my legal proof right here sitting before me. The present union states municipal and civil law codes of demand is an incorporated political unit, a self-government established by the political powers of the general assembly of the union based on the running (inaudible) and the city of Philadelphia PA 1854 which governs all the Caucasian people, Christians and Jews of 1863 union states right republic (inaudible) to ever become citizens of this union state republic. I have my national card right here, I'm a Salvadoran citizen.

Tr. Vol. I pp. 5-6. The trial court took Wharton's address to be a motion to dismiss, which it denied. Wharton told the trial court that his name was Majestic Shavazz El. The trial court also appointed standby counsel for Wharton.

[5] At a hearing on July 26, 2016, Wharton rejected a plea offer from the State. When the trial court informed Wharton that he could not have hybrid representation and Wharton's standby counsel said that he would be unable to make Wharton's argument based on his alleged "Moorish Nationality," Wharton chose to continue representing himself with standby counsel. Tr. Vol.

I p. 14. On August 1, 2016, the trial court held a hearing on Wharton's motion to suppress, and Wharton reiterated his Moorish-Nationality argument and once again rejected the State's plea offer. The trial court denied Wharton's jurisdictional claim and his motion to suppress.

On August 5, 2016, jury trial was held, at which Wharton immediately renewed his jurisdictional claim. When the trial court asked, Wharton refused to give his birthdate or social security number, and he repeatedly insisted on being addressed as Majestic Shavazz El. Wharton also made an objection (which the trial court overruled) to the deputy prosecutor on alleged conflict-of-interest grounds because he had represented Wharton in 2013 in a previous criminal matter.

Wharton made the following opening statement to the jury:

> THE DEFENDANT: Yes. In this case, I don't know if many of you know about the law, there's a difference between legal and the law, policies and people's rights. Today I'm defending myself, I'm not a lawyer, to prove my innocence in this case. You will see in this case, just like any of you, anybody can be wrongfully accused, anybody can be stereotyped, anybody can be targeted in any case if we allow this case to go on, but constitutionally you will see where my rights were violated. I was stereotyped, number one, then off a play of words I was sought out, I was, had a gun drawn on me, a taser gun, in front of my son, drawn on me in this case. I was thrown to the ground. I was dragged out of the Mall and I was just out shopping with my family and I wear a brace on my leg and they dragged me through the store and my shoe came off because my brace, it won't stay on very well, but they drug me through the store and helped me put that brace and shoe back on and they

said that was resisting arrest. Also, I said I wish not for you to search me. So first you will see that I was accused and stereotyped off of hearsay, no personal knowledge of anybody shoplifting. You will see the video. I was followed through the store. I never pick up anything that I don't pay for that I didn't want and put back. I also will bring in Dillard's receipts and they're going to say, well we couldn't find the pair of jeans, that doesn't mean I committed a crime because it's not against the law if I left something in the dressing room or someone picked it up, I don't know, but it's not a crime if I leave something in the dressing room. It's not a crime and like ladies and gentlemen as you will see in this case, this is not just about me, this is about my constitutional rights. They still are in the play. They still have to follow policies. They still have to follow legal policies, Dillard's shoplifting policies, security policies, he was working off duty in uniform as a Dillard's security officer. He never approached me as a security officer, but yes, he had on his uniform so I know he's a cop so I'm not going to go against that, I'm going to do what he ask me to do, but I have the right to know what is going on when I have no prior knowledge of why this man is wanting me to lay on the floor of Finish Line, in an Affidavit they said it was Foot Locker, I was never in Foot Locker, I was in Finish Line, and why do I need to lay on the ground and I have a right to say, hey, what's going on, why am I being arrested officer, am I being detained. He says nothing, he just pull, he speaks to me with his taser and a beam at my head in front of my son. My son was crying, and you're going to see this because I'm very passionate about this because you guys got kids and nobody needs to go through this and I rest my case right there.

Tr. Vol. II pp. 26-28. Wharton's closing argument largely mirrored his opening statement, with him specifically alleging that he was targeted without probable cause and that the State failed to prove he intended to steal anything from Dillard's.

[8]   The jury found Wharton guilty of theft and resisting law enforcement, both as Class A misdemeanors. Wharton then pled guilty to the enhanced charge of Level 6 felony theft. On August 31, 2016, the trial court sentenced Wharton to two years of incarceration for theft and one year for resisting law enforcement, both sentences to be served concurrently in therapeutic work release.

# Discussion and Decision

## Waiver of Counsel

[9]   Wharton contends that his waiver of counsel was not made voluntarily and intelligently.

> The Sixth Amendment, applicable to the states through the Fourteenth Amendment, guarantees a criminal defendant the right to counsel before he may be tried, convicted, and punished. *Faretta v. California*, 422 U.S. 806, 807, 95 S. Ct. 2525, 45 L. Ed. 2d 562 (1975). This protection also encompasses an affirmative right for a defendant to represent himself in a criminal case. *Id.* However, "[i]t is undeniable that in most criminal prosecutions defendants could better defend with counsel's guidance than by their own unskilled efforts." *Id.* at 834, 95 S. Ct. 2525. Because the defendant who waives his right to counsel and proceeds to trial unrepresented is forgoing "many of the traditional benefits associated with the right to counsel.... the accused must 'knowingly and intelligently' forgo those relinquished benefits." *Id.* "[H]e should be made aware of the dangers and disadvantages of self-representation, so that that the record will establish that 'he knows what he is doing and his choice is made with eyes open.'" *Id.* at 835, 95 S. Ct. 2525 (quoting *Adams v. United States ex rel. McCann*, 317 U.S. 269, 279, 63 S. Ct. 236, 87 L. Ed. 268 (1942)).

There is no particular formula or script that must be read to the defendant. The information that must be given "will depend on a range of case-specific factors, including the defendant's education or sophistication, the complex or easily grasped nature of the charge, and the stage of the proceeding." *Iowa v. Tovar*, 541 U.S. 77, 88, 124 S. Ct. 1379, 158 L. Ed. 2d 209 (2004).

Courts determining whether a waiver of counsel for trial was made voluntarily and intelligently must consider (1) the extent of the court's inquiry into the defendant's decision, (2) other evidence in the record that establishes whether the defendant understood the dangers and disadvantages of self-representation, (3) the background and experience of the defendant, and (4) the context of the defendant's decision to proceed pro se. We have drawn these factors from case law in the Seventh Circuit, *see United States v. Hoskins*, 243 F.3d 407 (7th Cir. 2001), and applied them in situations as diverse as trial for battery, *Poynter v. State*, 749 N.E.2d 1122 (Ind. 2001), and for capital murder, *Kubsch v. State*, 866 N.E.2d 726 (Ind. 2007).

*Hopper v. State*, 957 N.E.2d 613, 617-18 (Ind. 2011).

[10]  On June 30, 2016, the trial court advised Wharton of the perils of self-representation, advice that Wharton does not claim was deficient in any respect. There are also other indications in the record that Wharton understood the perils of self-representation. On July 26, 2016, the trial court further discussed Wharton's representation, with Wharton wanting to represent himself in part and have his standby counsel represent him in part, apparently so that Wharton could make the Moorish-Nationality argument that his standby counsel refused to make but still have representation during trial. When the trial court told Wharton that he could not have hybrid representation, he again stated that he would represent himself. The above indicates that while

Wharton understood that he might be better served by having counsel during trial, he made the conscious choice to advance his Moorish-Nationality argument instead.

[11] As a whole, the record indicates that Wharton's background has provided him with a fairly thorough understanding of the criminal justice system. Although Wharton's formal education is limited (he has earned a GED), he has a lengthy criminal history, including six prior felony convictions, several misdemeanor convictions, and two juvenile adjudications, dating back to 1993. Wharton's actions while defending himself indicate that his lengthy association with the criminal justice system has taught him much. Prior to trial, Wharton filed several *pro se* motions. Before and during trial, Wharton advanced his Moorish-Nationality argument, raised an alleged conflict-of-interest claim against the deputy prosecutor, cross-examined the State's witnesses, objected to questions by the State, presented his own evidence, chose not to testify, and made a cogent opening statement and final argument to the jury. Wharton's education and background indicate that his waiver of counsel was voluntary and intelligent.

[12] Wharton's main argument is that his waiver of counsel occurred in a context of incompetence, pointing, of course, to his Moorish-Nationality argument as evidence of that alleged incompetence. Wharton argues that he relied heavily upon his belief system, which he describes as based on "'radical political ideals'" or "detached from reality" to support his defense. Appellant's Br. p. 9. While Wharton's argument regarding his alleged Moorish nationality is wholly

without merit and could be described as peculiar, his decision to pursue it does not indicate incompetence. Indeed, a fair reading of the record indicates that the argument was likely intended to disrupt and frustrate the process, perhaps in an attempt to make such a nuisance of himself that the State would be willing to offer a better plea agreement.[1] Be that as it may, the record clearly indicates that Wharton was able to present lucid, reasonable arguments based on actual legal concepts when it suited him, as he did during his opening statement and closing argument. The record in this case does not support a conclusion that Wharton was incompetent. As such, Wharton has failed to establish that his waiver of counsel was not voluntary and intelligent.

[13] The judgment of the trial court is affirmed.

Najam, J., and Riley, J., concur.

---

[1] It is worth noting that Wharton is the latest in a line of criminal defendants advancing variations of the argument that the courts of Indiana do not have jurisdiction over them due to their "Moorish" status. *See, e.g.*, *Brown v. State*, 64 N.E.3d 1219, 1229 (Ind. Ct. App. 2016) ("Here, Ankh-El [a/k/a Brown] asserts that the trial court denied his request to retain 'Consuls from the Moorish American Nation' because they did not have licenses to practice law in Indiana.") (bracketed material added); *Taylor-Bey v. State*, 53 N.E.3d 1230, 1231 (Ind. Ct. App. 2016) ("Tyreese Taylor-Bey was convicted of murder. He now appeals, arguing that the trial court lacked jurisdiction based on his status as a 'Moorish American National Sovereign' and 'Secured Party Creditor.'").