IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | No. 34814-8-III |
| | ) | |
| Appellant/ | ) | |
| Cross Respondent, | ) | |
| | ) | |
| v. | ) | UNPUBLISHED OPINION |
| | ) | |
| STEPHEN R. JACKSON, | ) | |
| | ) | |
| Respondent/ | ) | |
| Cross Appellant. | ) | |

PENNELL, J. — The parties cross appeal Stephen Jackson's conviction and sentence for bail jumping. We affirm Mr. Jackson's conviction, but the sentence cannot be affirmed on the current record. Although the trial court identified a permissible basis for an exceptional sentence downward in its oral ruling, the written findings of fact and conclusions of law are insufficient. Mr. Jackson's case is therefore remanded for further proceedings.

FACTS

After being arrested on multiple felony charges, Stephen Jackson appeared in superior court for a probable cause and bond hearing. He was not represented by counsel. The court advised Mr. Jackson he had the right to remain silent and asked if he wanted to be represented by an attorney. The court told Mr. Jackson, "[t]he right to an attorney is two-fold. You have a right to an attorney to defend you on the charges and you have a right to an attorney today to help you establish conditions of release." Report of Proceedings (RP) (Nov. 30, 2015) at 9. Mr. Jackson responded, "[n]o, sir. Can I—well, I—I don't really need an attorney right now." *Id.* Mr. Jackson went on to argue on his case and the court entered a bond order with specific conditions of release. Mr. Jackson posted bond, was released from custody, and subsequently received appointed counsel.

Over the next several months, Mr. Jackson appeared for various court hearings. Mr. Jackson was tardy for court appearances scheduled for May 2 and May 16, 2016. At the May 16 hearing, Mr. Jackson signed a promise to appear, advising him of a July 11 pretrial hearing date. Trial was scheduled for July 26.

Mr. Jackson failed to appear on July 11. A warrant was issued and Mr. Jackson was arrested three days later when he reported for an appointment with his probation officer. At a subsequent bond hearing, the court gave Mr. Jackson another chance and

2

released him from custody under the condition that he not be late to any more court appearances. Mr. Jackson failed to meet this expectation. He was arrested after appearing late for a subsequent court hearing and remained in custody through the conclusion of his court proceedings.

The State amended Mr. Jackson's charges to include a count of bail jumping, based on the missed court date on July 11. The other charges were later dismissed and Mr. Jackson proceeded to a jury trial.

The State presented its trial evidence through a deputy court clerk. Mr. Jackson testified in his defense. He explained that on May 16 he "heard a bunch of dates" and only his trial date, July 26, stood out to him. RP (Oct. 6, 2016) at 192. Mr. Jackson did not remember the July 11 pretrial date and did not realize there would be another pretrial hearing. He explained he "probably didn't read" his written promise to appear. *Id*. at 201. Mr. Jackson admitted he made a mistake and explained that he was truly surprised when he was arrested as he did not realize he had missed court.

Forgetfulness is not a defense to bail jumping and the jury was instructed accordingly. A guilty verdict ensued. Mr. Jackson's sentencing hearing was scheduled for the day after the jury's verdict.

After hearing from the parties at sentencing, the court announced its intent to impose an exceptional sentence downward. The judge noted he had been struggling with Mr. Jackson's case and that it had kept him up the previous night. While recognizing Mr. Jackson's conduct was "less than stellar," RP (Oct. 7, 2016) at 282, the court found the standard range excessive. The court reasoned Mr. Jackson was simply "lackadaisical" in forgetting his court dates and therefore the purposes of the Sentencing Reform Act of 1981 (SRA), chapter 9.94A RCW, would not be served by imposing a sentence in the range of 51-60 months. *Id*. at 281-85. In its written findings of fact and conclusions of law, the court specifically reasoned that its downward departure was justified by analyzing the seven policy factors of the SRA. Clerk's Papers at 107-09.

The State appeals Mr. Jackson's sentence and Mr. Jackson appeals his conviction.

ANALYSIS

*State's appeal: the exceptional sentence downward*[1]

The SRA permits trial courts to depart from standard sentencing ranges in appropriate circumstances. A below range sentence may be imposed if the trial court finds the defendant's offense conduct involved substantial and compelling mitigating

---

[1] Although the State's opening brief is not fully compliant with the Rules of Appellate Procedure, it is sufficiently clear to permit review on the merits as contemplated by RAP 1.2(a).

circumstances. RCW 9.94A.535; *State v. Akin*, 77 Wn. App. 575, 584, 892 P.2d 774 (1995). To qualify for a departure, a mitigating circumstance must be atypical for the defendant's class of conviction. Factors already taken into account by the legislature in adopting the SRA (RCW 9.94A.010) are not atypical and cannot justify a sentence outside the standard range. *State v. Powers*, 78 Wn. App. 264, 270, 896 P.2d 754 (1995). When faced with an appeal of an exceptional sentence, we review the legal sufficiency of a trial court's departure decision de novo. RCW 9.94A.585(4)(a); *State v. Law*, 154 Wn.2d 85, 93-94, 110 P.3d 717 (2005).

The State claims the trial court completely failed to identify a legal basis for an exceptional sentence downward. We disagree. In its oral ruling, the trial court explained Mr. Jackson's offense conduct was atypical of bail jumping, in that he did not purposefully miss his court date. Instead, he was merely lackadaisical. In addition, the harms caused by Mr. Jackson's crime were less egregious than in most bail jumping cases because Mr. Jackson never fled the jurisdiction, and he made himself readily available to the court when he reported to probation. While not every trial judge might find Mr. Jackson's circumstances compelling, the court here was presented with sufficient offense-specific facts to justify an exceptional sentence downward. *See, e.g.*, *Akin*, 77 Wn. App. at 585-86 (defendant's voluntary surrender justified an exceptional sentence downward

for escape).[2]

Although the trial court's oral ruling identified a valid basis for an exceptional sentence downward, the written findings and conclusions were insufficient. Unlike the oral ruling, the written order did not include a discussion of the unique crime related mitigating circumstances applicable to Mr. Jackson's case. Instead, the written findings and conclusions focused on the legislative purposes behind the SRA and why the court's selected sentence comported with those purposes. Although it was not inappropriate for the trial court to discuss the SRA's purposes in explaining its selected sentence, *Powers*, 78 Wn. App. at 270, the findings and conclusions needed to focus on the mitigating circumstance that caused Mr. Jackson's case to fall outside the heartland of typical SRA bail jumping cases. RCW 9.94A.535.[3] Because the court's written disposition lacks this essential component, remand is warranted. *See State v. Friedlund*, 182 Wn.2d 388, 341 P.3d 280 (2015).

---

[2] In its briefing, the State does not clarify whether it is challenging the trial court's factual findings as well as its legal conclusions. In any event, the court's findings regarding the reasons for Mr. Jackson's failure to appear are supported by the record and are not clearly erroneous. RCW 9.94A.585(4)(a); *Law*, 154 Wn.2d at 93.

[3] Contrary to the State's assertions, the majority of the trial court's SRA discussion was not inappropriate. We do not read the court's opinion as disagreeing with the legislative choices contained in the SRA. Instead, the trial court simply pointed out that the purposes of the SRA did not warrant a standard range sentence under the unique circumstances of Mr. Jackson's case.

*Mr. Jackson's appeal: waiver of right to counsel at bond hearing*

Mr. Jackson argues he did not validly waive the right to counsel at his probable cause and bond hearing and, as a result, the bond order that formed a basis for his conviction was invalid. The logical relationship between Mr. Jackson's assignment of error and requested remedy is questionable. But in any event, we deny relief because this issue has not been preserved for appellate review.

A constitutional[4] challenge can be raised for the first time on appeal if it is "manifest" as contemplated by RAP 2.5(a)(3). To make a showing of manifest error, an appellant must demonstrate that an alleged error "is truly of constitutional dimension." *State v. O'Hara*, 167 Wn.2d 91, 98, 217 P.3d 756 (2009).

The record here does not indicate any constitutional error. While a defendant has a constitutional right to counsel at all critical stages of a criminal prosecution, this right may be waived. There is no specific test for a valid waiver. *Iowa v. Tovar*, 541 U.S. 77, 87-88, 124 S. Ct. 1379, 158 L. Ed. 2d 209 (2004). Instead, we look at "a range of case-specific factors, including the defendant's education or sophistication, the complex or easily grasped nature of the charge, and the stage of the proceeding." *Id*. at 88. During

---

[4] Mr. Jackson argues the denial of counsel violated court rules as well as the Constitution. However, because this issue has not been preserved, we consider only the constitutional challenge.

his bail hearing, Mr. Jackson was advised of the right to counsel and he indicated he wished to proceed pro se. Mr. Jackson has not established that, at this preliminary stage of the proceedings, his waiver was invalid. Accordingly, there is no apparent error and we decline review of Mr. Jackson's legal challenge.

## STATEMENT OF ADDITIONAL GROUNDS FOR REVIEW

In his statement of additional grounds for review (SAG), Mr. Jackson makes several legal challenges to his conviction. None warrant relief. The trial court's to-convict instruction accurately set forth the elements required by statute, RCW 9A.76.170. Defense witnesses were properly excluded as irrelevant. *See State v. Carver*, 122 Wn. App. 300, 305-06, 93 P.3d 947 (2004). And the example used by the prosecutor to explain circumstantial evidence during closing argument fell within the scope of permissible advocacy. *See State v. Dhaliwal*, 150 Wn.2d 559, 577-81, 79 P.3d 432 (2003).

As to Mr. Jackson's remaining claims, the arguments raised relate to facts and materials outside the record. The proper avenue for bringing those claims is a personal restraint petition, not a direct appeal. *State v. McFarland*, 127 Wn.2d 322, 335, 899 P.2d 1251 (1995).

No. 34814-8-III
*State v. Jackson*

CONCLUSION

Mr. Jackson's conviction is affirmed. The sentence is reversed and this matter is remanded for either resentencing or the entry of adequate findings of fact and conclusions of law, consistent with this opinion. Mr. Jackson's motion to extend time for filing his report as to continued indigency is granted. As there is no substantially prevailing party on review, no action is necessary on Mr. Jackson's motion to deny appellate costs.

A majority of the panel has determined this opinion will not be printed in the Washington Appellate Reports, but it will be filed for public record pursuant to RCW 2.06.040.

Pennell, J.

WE CONCUR:

Fearing, C.J.

Korsmo, J.

9