# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-07-00089-CR

**Greg S. Daniels, Appellant**

**v.**

**The State of Texas, Appellee**

## FROM THE COUNTY COURT AT LAW NO. 3 OF TRAVIS COUNTY
## NO. 729323, HONORABLE DAVID CRAIN, JUDGE PRESIDING

## M E M O R A N D U M   O P I N I O N

Appellant Greg S. Daniels was charged by information with misdemeanor assault. *See* Tex. Penal Code Ann. § 22.01(a)(1) (West Supp. 2007). Appellant pleaded not guilty, and a jury found him guilty as charged.[1] The trial court sentenced appellant to one year confinement in the Travis County jail and a $2,000 fine, but suspended imposition of sentence and placed him on community supervision for two years. In five issues, appellant challenges a variance between the pleadings and the proof, the adequacy of the admonishment regarding self-representation, and the failure of the trial court to instruct the jury on self-defense. For the reasons that follow, we affirm the judgment of conviction.

On January 30, 2006, Austin Police Officer Heather Schouest responded to an assault report by appellant's next-door neighbor, Douglas Huyck. Testimony at trial showed that appellant

---

[1] At trial, appellant represented himself. He is represented by counsel on appeal.

had engaged in feuds with Huyck and other neighbors concerning automobiles parked in appellant's driveway and other issues that led to litigation. When Huyck appeared at a hearing to testify against appellant, tensions escalated.

On the afternoon of January 30, Huyck exited his house to go jogging when he saw appellant and a friend in appellant's front yard. Appellant yelled an obscenity at Huyck and, pointing at his friend, called out, "Here's someone to kick your ass. Come over here. Here's somebody who will kick your ass." Huyck approached appellant and his friend. According to Huyck's report to the police and his testimony at trial, appellant indicated to Huyck with his middle finger. Appellant testified that he pointed at Huyck with his index finger. As Huyck approached the two men on the sidewalk easement of appellant's drive, appellant told Huyck to get off his property. With his finger, appellant poked Huyck twice in the eye. In response, Huyck hit appellant twice in the shoulder area. Appellant's friend separated the two men, and Huyck withdrew into his house. Huyck suffered pain and injury from the incident, and his wife observed that his eye was "red and puffy and watery." The Huycks reported the incident to the police.

Shortly thereafter, Officer Schouest arrived at the scene and interviewed the Huycks as well as appellant and his friend. Appellant acknowledged that he poked Huyck in the eye. Schouest's police report stated, "[Appellant] admitted to pointing his finger at close range on Huyck's face, striking Huyck in the left inner eyeball with his index finger." Schouest observed redness in appellant's eye. Appellant later told the investigating police officer, Detective Brendon Hanly, that Huyck walked into his finger.

2

In his first three issues, appellant contends that the State failed to prove that appellant caused bodily injury to Huyck "by striking [him] on and about the head with [his] hand," that a variance between the pleadings and the proof existed and failed to give appellant notice of the charge, and that the variance exposes appellant to a subsequent prosecution for the same offense. Specifically, appellant complains that the evidence is legally insufficient because there is a variance between the material allegations in the charging instrument and the evidence presented at trial.[2]

The information alleged that appellant, "on or about January 30, 2006, did then and there intentionally, knowingly, and recklessly cause bodily injury to Douglas Huyck by striking Douglas Huyck on and about the head with the Defendant's hand." Appellant argues that, because "there is no evidence that [appellant] struck Mr. Huyck on or about his head with his hand," but rather that the evidence was that appellant "poked Mr. Huyck's eye with his finger," there is no evidence that the complainant was "struck" with appellant's "hand." Although a finger is part of a hand, and the eyes are located in the head, appellant insists that "a hand-to-head allegation does not necessarily include a finger-to-eye allegation."

A variance occurs when there is a discrepancy between the allegations in the charging instrument and the proof at trial. *Gollihar v. State*, 46 S.W.3d 243, 246 (Tex. Crim. App. 2001) (reaffirming fatal variance doctrine and adopting materiality test). A variance arises when the State proves the defendant guilty of a crime but proves its commission in a manner that varies from the

---

[2] The court of criminal appeals has observed that some courts treat variance claims as a notice-related claim, and others as insufficiency of the evidence claims, but that Texas courts have "routinely treated variance claims as insufficiency of the evidence problems." *Gollihar v. State*, 46 S.W.3d 243, 246-47 (Tex. Crim. App. 2001). Because appellant raises both claims, we will address them both.

allegations in the charging instrument. *Id*. (citing 42 George E. Dix & Robert O. Dawson, *Texas Practice: Criminal Practice and Procedure* § 31.81, at 178 (1995)). A variance that is not prejudicial to a defendant's "substantial rights" is immaterial. *Id*. at 248. To determine whether a defendant's substantial rights have been prejudiced, we ask whether (i) the charging instrument informed the defendant sufficiently to allow him to prepare an adequate defense at trial, and (ii) prosecution under the deficiently drafted instrument would subject the defendant to the risk of being prosecuted later for the same crime. *Id*. A variance is fatal only if "it is material and prejudices the defendant's substantial rights." *Id*. at 257.

Applying these principles to this case, the question is whether proof that appellant poked the complainant in the eye with a finger is a fatal variance from the charging instrument's allegation of "striking [complainant] on or about the head with the hand." Asking the questions posed by *Gollihar*, then, "Did the indictment inform appellant of the charge against him sufficiently to allow him to prepare an adequate defense at trial, and would the indictment subject appellant to the risk of being prosecuted later for the same crime?"

The incident was described by the witnesses who testified at trial interchangeably as both poking and striking. In his opening statement, appellant argued, "The poke in the eye was not with the middle finger. It was with your pointing finger. Your pointing finger, okay. That's what the evidence is going to show. Not the middle finger." Appellant then denied that he "poked" the complainant in the eye, but admitted that he "touched [complainant's] nose," and it was possible that when the complainant leaned forward, that his finger "touched [complainant's] eye." Huyck testified that appellant's "finger hit me twice"; that "I was struck twice"; "[appellant] then reaches out, and

4

at that point, pokes me in the eye, right in there"; "[h]e reached up and was, again, continuing to comment, 'Don't f--- with me,' and pokes me in the eye"; and "he poked me again." Officer Schouest testified that appellant told her:

> there had been basically a yelling match between the two of them regarding the recent case for which [appellant] had been taken to trial. And that Mr. Huyck had approached on the public sidewalk to Mr.—in front of [appellant]'s residence. The argument had become a little bit more heated. And at some point, [appellant] had gotten very close to Mr. Huyck's face with his finger and had poked Mr. Huyck in his left eye.

Detective Hanly testified that appellant told him that Huyck "walked into his finger." Appellant testified on his own behalf that he was pointing his finger at Huyck " to get him away from me," but that "my finger touched his slimy nose, and I remember the touch of his slimy nose." During his cross-examination of the complainant, appellant stated, "Let's just go ahead and say you were poked in the eye. I only felt [like] poking you in the nose. But you say I poked you in the eye."

Thus, appellant's defense strategy was that he "touched" appellant on his nose and not his eye and that it was done with his index finger and not his middle finger. Appellant specifically denied doing that of which he now claims he had no notice. A review of the record shows that appellant was not misled by the charge and understood exactly with what he was charged. By his own testimony and questioning of other witnesses, appellant was on notice of the charge. Moreover, the record makes clear for what conduct appellant was charged. Appellant is in no danger of being prosecuted again for the assault. *See Gollihar*, 46 S.W.3d at 258 (citing *United States v. Apocada*, 843 F.2d 421, 430 n.3 (10th Cir.) (entire record, not just indictment, may be referred to in protecting against double jeopardy in event of subsequent prosecution), *cert. denied*, 488 U.S. 932

5

(1988)).  We hold that there was no variance, let alone a fatal variance, between the allegations in the information and the evidence adduced at trial.

Even assuming there is a variance in any respect, we conclude that it is not material.  The record does not show that appellant was surprised at trial by the State's evidence.  Appellant was able to prepare his defensive theory, to call witnesses, and to cross-examine the State's witnesses.  His testimony and cross-examination clearly showed he understood the charge.  Furthermore, there is no possibility that the variance placed appellant at risk of double jeopardy.  Any variance between the charging instrument and the evidence is not material.  We overrule appellant's first three issues.

In his fourth issue, appellant asserts that he was denied his right to counsel because he was never admonished about the dangers of self-representation.  The rights to assistance of counsel and to self-representation are protected by the Sixth Amendment of the United States Constitution, made applicable to the states by the Fourteenth Amendment. *See Faretta v. California*, 422 U.S. 806, 818-21 (1975); *see also United States v. Cronic*, 466 U.S. 648, 653-55 (1984).  "The Sixth and Fourteenth Amendments of our Constitution guarantee that a person brought to trial in any state or federal court must be afforded the right to the assistance of counsel before he can be validly convicted and punished by imprisonment." *Faretta*, 422 U.S. at 807.  In *Faretta*, the Supreme Court held that the Sixth Amendment not only affords an accused facing an adversarial criminal proceeding the right to a defense, but the Sixth Amendment also "grants to the accused personally the right to make his defense." *Id*. at 819.  The Court reasoned:

> Although not stated in the Amendment in so many words, the right to self-representation—to make one's own defense personally—is thus necessarily implied

6

> by the structure of the Amendment. The right to defend is given directly to the accused; for it is he who suffers the consequences if the defense fails.

*Id*. at 819-20 (footnote omitted). The Court explained that it is for the defendant personally to decide whether assistance of counsel in his particular case is to his advantage, and his choice must be honored out of "'that respect for the individual which is the lifeblood of the law,'" even if his choice may not be prudent. *Id*. at 834 (quoting *Illinois v. Allen*, 397 U.S. 337, 350-51 (1970) (Brennan, J., concurring)). Certainly the tension between the right to assistance of counsel and to self-representation is a delicate one and creates difficulty for trial courts.

A decision to represent oneself must be made knowingly, intelligently, and voluntarily. *Id.* at 835. Although the Supreme Court has not prescribed any formula or script to determine if a defendant wishes to forego counsel and represent himself, the record must establish that the accused knows what he is doing and his choice is made with his eyes open. *Johnson v. State*, 760 S.W.2d 277, 278 (Tex. Crim. App. 1988). The information a defendant must have to make an intelligent election "will depend on a range of case-specific factors, including the defendant's education or sophistication, the complex or easily grasped nature of the charge, and the stage of the proceeding." *Iowa v. Tovar*, 541 U.S. 77, 88 (2004). Courts look at the totality of the particular facts and circumstances of a case in deciding whether the defendant's decision was knowing, intelligent, and voluntary. *Id.* at 92. The State cannot force a defendant to have a lawyer. *See Faretta*, 422 U.S. at 820-21. A defendant has a constitutional right to represent himself. *Id.* at 819-20. We must determine whether, under the particular facts and circumstances of this case, appellant made his decision voluntarily, knowingly, and intelligently. *See id.* at 835.

Appellant made his choice to represent himself on the record. The record shows that on May 8, 2006, appellant was admonished in open court of his right to representation by counsel and his right to appointment of counsel free of charge if he was indigent. Appellant signed a waiver of his right to counsel. The trial court found that appellant understood his right to have an attorney appointed and the dangers and disadvantages of self-representation. The court made a finding that the waiver was knowingly and intelligently made.

Eight months later, on the day appellant's trial was scheduled to begin, the trial court ascertained that appellant was aware of the charge of which he was accused and the range of punishment. Appellant informed the trial court "you know, I know what's going on." The trial court again inquired into appellant's decision to defend himself. Outside the presence of the venire panel, the following colloquy took place:

Court: In any event, you decided to represent yourself in this case, right?

Appellant: Oh, yeah. Yeah.

Court: And you've been told that you have a right to an attorney, right?

Appellant: Sure.

Court: And as far as I remember or recall, you never said that you're indigent. In fact, I think you said you were not indigent and you wanted to represent yourself. I don't remember. If I'm wrong, say it.

Appellant: Well, I didn't think the indigency thing came up, but I'm not indigent.

Court: Okay. So you have not requested that because of your indigency, that you're poor, that you need to have a court-appointed attorney.

Appellant: Absolutely correct.

8

Court:        So you desire completely to represent yourself?

Appellant:    That's right.

Court:        And you understand that if things don't go your way, there could be jail time involved.

Appellant:    Yes, I understand.

Court:        Now, you understand I can't—and I'm the judge here and I can't—I can't take sides. So I can't go over and, you know, correct you if you're doing something wrong or tell you, "Don't ask that question," or "Don't say that." Although if there are objections from Mr. Prosecutor here, then I'm going—I might just say, "I'll grant your objection," or "Overrule your objection." But if I grant his objection, and he's objecting to something you're saying because you're saying it out of turn, or something like that, then you have to comply with my ruling.

Appellant:    Of course.

Court:        So, you know, do you know what voir dire means?

Appellant:    Certainly.

As the trial court began to explain jury selection to him, appellant assured the judge, "I've done this before." The record also shows that appellant was familiar with jury settings and that a setting on the trial date did not necessarily mean that his case would be reached. Appellant represented himself through the trial and did not seek assistance or equivocate in his insistence that he represent himself. A review of the entire record shows that appellant was a small business owner and that he had engaged in litigation on prior occasions—both with representation and with self-representation. The record also shows that this was not appellant's first experience with the criminal justice system as he claimed he had been wrongly accused by his neighbors on prior occasions, had gone to court,

9

and had prevailed. It is clear that appellant intended to represent himself and had done so on a prior occasion.

Appellant's invocation of his right to self-representation was clear and unequivocal. No effort was made to persuade the trial court that appellant's decision was uninformed or involuntary. Considering the totality of the facts and circumstances in this case, we conclude that appellant's clear and unequivocal exercise of his constitutional right to represent himself was an informed and voluntary decision.

After reviewing the entire record, we conclude that the trial court's failure, if any, to admonish appellant more thoroughly about the dangers and disadvantages of self-representation before appellant decided to represent himself would not have resulted in a different outcome of appellant's trial. Appellant adequately prepared his own defense, participated in cross-examination, produced a witness, and was steadfast in his decision to represent himself. Even assuming there was error in the trial court's admonishment, we hold beyond a reasonable doubt that any inadequacy in the admonishment did not contribute to appellant's conviction or punishment. *See* Tex. R. App. P. 44.2(a). We overrule appellant's fourth issue.

In his fifth issue, appellant complains that he suffered egregious harm by the trial court's omission of an instruction on self-defense in the jury charge. Though it is undisputed that he did not request the instruction, appellant argues that the trial court should have included the instruction sua sponte. We disagree.

A person is justified in "using force against another when and to the degree he reasonably believes the force is immediately necessary to protect himself against the other's use or

attempted use of unlawful force." Tex. Penal Code Ann. § 9.31(a) (West Supp. 2007). A defendant is entitled to an instruction on every defensive issue raised by the evidence, whether it is strong, weak, unimpeached or contradicted. *See* Tex. Code Crim. Proc. Ann. art. 36.14 (West 2007); *Hamel v. State*, 916 S.W.2d 491, 493 (Tex. Crim. App. 1996). Because appellant did not object to any jury charge error—or request a charge—appellant must show that he was egregiously harmed. *See Almanza v. State*, 686 S.W.2d 157, 171 (Tex. Crim. App. 1985) (op. on reh'g).

A review of the record shows that appellant's theory of the case and his strategy at trial did not rest on a justification of self-defense. No witness testified that appellant used force against his neighbor to protect himself. The evidence showed that appellant pointed his finger in Huyck's direction. The dispute rested on whether appellant then poked Huyck in the eye—or nose—or Huyck walked, leaned or lunged forward and appellant accidently caused the resulting injury. Appellant's theory of the case was that the injury was an incident or an accident brought about by the neighbor's own actions. Rather than raise the justification of self-defense, the evidence at trial, at most, raised a question as to whether appellant *intended* to injure Huyck. Appellant argued in his opening statement that it was not his *intent* to "touch" Huyck's eye. We conclude that the trial court did not err in failing sua sponte to include a self-defense instruction in the jury charge. *See Posey v. State*, 966 S.W.2d 57, 62 (Tex. Crim. App. 1998) (holding Article 36.14 does not impose "a duty on trial courts to *sua sponte* instruct the jury on unrequested defensive issues"). Even if we assume appellant was entitled to a self-defense instruction, there has been no showing that appellant was egregiously harmed by the omission. We overrule appellant's fifth issue.

Having overruled appellant's issues, we affirm the judgment of conviction.


_____

Jan P. Patterson, Justice

Before Justices Patterson, Puryear and Pemberton

Affirmed

Filed:   January 30, 2008

Do Not Publish