# IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

STATE OF DELAWARE,

    v.

ROBERT J. PICKLE,

        Defendant.

:
:
:
:
:
:
:
:

I.D. No. 1309017881
Kent County

Submitted: November 17, 2017
Decided: December 4, 2017

## ORDER

Upon Defendant's Amended First Motion
for Postconviction Relief
*Denied.*

Susan G. Schmidhauser, Esquire, Department of Justice, Dover, Delaware; attorney for the State.

Robert J. Pickle, *pro se*

Kathleen K. Amalfitano, Esquire, Office of the Public Defender, Dover, Delaware; attorney for Defendant.

WITHAM, R.J.

Before the Court is an Amended First Motion for Postconviction Relief filed by Defendant Robert J. Pickle on his own behalf. The Court has also considered the Affidavit of Defense Counsel's Reply Brief, the State's Response to Defendant's Motion for Post-Conviction Relief, and Defendant's Reply Brief to the State's Response. The Court has also considered the arguments of Mr. Pickle and his defense counsel, Kathleen Amalfitano, at a hearing held on this motion on November 17, 2017. After careful consideration of the above, the Court concludes that Mr. Pickle's Amended First Motion for Postconviction Relief must be summarily DENIED.

## FACTS

Mr. Pickle was convicted of five counts of Rape in the Third Degree. During the seven-month span of the offenses to which he pled guilty, Mr. Pickle was forty-five years old and his young male victim was initially fourteen years old. The victim turned fifteen during the course of the crimes. Mr. Pickle was first indicted by a grand jury on twenty-six counts of Rape in the Third Degree, one count of Endangering the Welfare of a Child, and one count of Providing Alcohol to an Underage Person.

According to the affidavit supporting the arrest warrant, Mr. Pickle and the victim's relationship began when the victim downloaded a social networking app for persons seeking same-sex relationships. The two began to chat and text with each other and soon thereafter, according to the officer's affidavit, the victim would sneak out of his home on foot to meet Mr. Pickle, who would drive him to his own home in

2

Harrington, Delaware or to Slaughter Beach, Delaware. The relationship between the two began in February 2013 and lasted until September 2013, during which time they would engage in oral or anal sex at least weekly and, on other occasions, masturbate. According to the affidavit, Mr. Pickle admitted to police that he had oral and anal sex with the victim several times but could not recall how many times it had occurred.

Mr. Pickle eventually pleaded guilty to five counts of Rape in the Third Degree as part of a plea agreement with the State. In the Plea Agreement, Mr. Pickle pleaded guilty to each of the charges and accepted a sentencing recommendation of twenty-five years for each count, suspended after five years at Level V for each count, followed by six months at Level IV home confinement for the first count, followed by two years at Level III for each count. The State agreed to enter a *nolle prosequi* for the remaining charges. Both Mr. Pickle and his attorney signed the plea agreement form.

Mr. Pickle also completed a Truth-in-Sentencing form. The form indicated that he had never been a patient in a mental hospital, had completed college, was not under the influence of alcohol or drugs at the time, was entering into the plea freely and voluntarily, had not been promised anything outside of the written agreement, and had not been threatened or forced to enter the plea by anyone, including his lawyer. The form indicated that he was satisfied with his lawyer's representation and that his lawyer had fully advised him of his rights and discussed the sex offender registration requirements. Both Mr. Pickle and his attorney signed the Truth-in-Sentencing form.

At his plea hearing on April 2, 2014, Mr. Pickle was sworn and the Court engaged him in a colloquy. The Court reminded him of the trial rights he was giving up, and then proceeded to ask Mr. Pickle:

> THE COURT: . . . I have in front of me several documents. They're called the plea agreement and truth-in-sentencing forms. Do you have these documents in front of you as well?
> THE DEFENDANT: That's correct, sir.
> THE COURT: Thank you. Did you sign both documents?
> THE DEFENDANT: That is correct, sir, I did.
> THE COURT: Have you reviewed both documents with your attorney?
> THE DEFENDANT: Yes, sir.[1]

The Court then discussed the potential penalties with Mr. Pickle and made sure that he understood them.

> THE COURT: The truth-in-sentencing guilty plea form itself requires you to check off the appropriate yes and no blocks as they correspond to questions asked of you on the page. You are to carefully review these questions with your attorney, your attorney should answer any question you may have about the questions and then each block should be checked off correctly.
> Did you have your attorney check the blocks off for you?
> THE DEFENDANT: Yes, I did.
> THE COURT: Did you instruct her accordingly and you reviewed this to make sure she checked off each block correctly?
> THE DEFENDANT: Yes, sir, I did.
> THE COURT: Very well. Likewise, you should also read and understand that you will be waiving some very important rights which

---

[1] Tr. of Plea Colloquy & Sentencing 5:3–14.

are covered in Paragraphs 1 through 7. These rights are called your Constitutional Rights or trial rights.

Do you understand you waive these rights?

THE DEFENDANT: Yes, sir.

THE COURT: Has anyone forced or threatened you to enter this plea?

THE DEFENDANT: No, sir.

THE COURT: Are you in fact guilty of these five separate counts?

THE DEFENDANT: That is true, sir.

. . . .

THE COURT: Have you had sufficient time to review the matter with your attorney?

THE DEFENDANT: Yes, sir.

THE COURT: Do you believe your attorney's fully advised you pertaining to your rights on this case?

THE DEFENDANT: Yes, sir.

THE COURT: Has she otherwise represented you so far satisfactorily?

THE DEFENDANT: That is true, sir.

THE COURT: Very good. Thank you.

. . . .

THE COURT: . . . The Court finds the plea is made knowingly and voluntarily with an understanding of the plea and the consequences that may follow. The plea is accepted.[2]

The Court sentenced Mr. Pickle in a manner consistent with the recommendations in the Plea Agreement.

Mr. Pickle filed his First Motion for Postconviction Relief on December 16,

---

[2] *Id.* at 6:9–7:12, 7:17–8:3, 8:8–11.

2014. It was initially rejected by the Prothonotary because it was not properly signed, but Mr. Pickle returned a signed motion which was filed on March 9, 2015. Through inadvertence, the Prothonotary did not place the filed motion on the docket.

On January 11, 2017, Mr. Pickle filed an Amended First Motion for Postconviction Relief that expanded upon existing grounds and added others. He also wrote a letter, dated February 17, 2017, to another judge of this Court. That letter further expanded upon the basis for Mr. Pickle's motion.

## THE DEFENDANT'S CONTENTIONS

Mr. Pickle contends that he is factually innocent because his fifteen-year old victim extorted him and took advantage of his mental illness to manipulate him into a passive sexual role. Mr. Pickle does not deny that he intentionally had sex with his victim but describes it as a series of "rapes" perpetrated by the victim. He also asserts several grounds for ineffective assistance of counsel:

In his Amended Motion, Mr. Pickle raises six grounds for relief: (1) ineffective assistance of counsel during pre-trial, including a failure to properly examine the evidence; (2) ineffective assistance of counsel during plea negotiations; (3) defense counsel's alleged violation of Delaware Rule of Professional Conduct 4.1;[3] (4) failure to request psychiatric examination of defendant in violation of "402 Rule;" and (5) insufficiency of plea colloquy due to colloquy consisting only of a "[b]oiler [p]late

---

[3] While Mr. Pickle also alleges violations of "71 Del law c 379 § 5.6 Del law 136," the Court cannot determine what statute is referred to by this citation (the Delaware Code contains only 31 titles) and no description of the referenced section is provided. Therefore, this citation shall not impact the Court's analysis.

[d]iscussion;" and (6) failure to examine evidence. Because all arguments raised in ground six were already raised in Ground one, the Court shall not address it individually.

## DISCUSSION

### *I. The Motion Is Timely*

Before analysis may proceed, the Court must first determine whether Mr. Pickle has met the procedural requirements of Superior Court Civil Rule 61(i). Motions for postconviction relief must be filed within a year of the time when the judgment of conviction becomes final.[4] Here, the motion was accepted by this Court prior to the expiration of the one year deadline. Mr. Pickle later amended his motion, alleging additional grounds for relief which fell outside the deadline. However, this Court, pursuant to its March 15, 2017 letter, determined that because the delay was in part caused by no-fault of Mr. Pickle but rather by a mistake in the Prothonotary's office, the Court will consider all grounds for relief on their merits.

### *II. The Alleged Grounds Plainly Do Not Entitle Mr. Pickle to Relief*

### 1. INEFFECTIVE ASSISTANCE OF COUNSEL DURING PRETRIAL, INCLUDING FAILURE TO EXAMINE EVIDENCE

The Sixth Amendment guarantees defendants the right to the "effective assistance of counsel" throughout each critical stage in the criminal process,

---

[4] Super. Ct. Crim. R. 61(i)(1) (2014). Because Mr. Pickle's motion was filed before the June 4, 2014 amendments to Rule 61, the prior version of the Rule controls.

including pretrial preparation.[5]

A Rule 61 movant must satisfy the two-prong test of *Strickland v. Washington*[6] to determine whether his counsel rendered assistance that was "so defective as to require reversal of a conviction."[7] "First, the defendant must show that counsel's performance was deficient."[8] Such deficient performance must "fall[] 'below an objective standard of reasonableness,' as indicated by 'prevailing professional norms.'"[9]

Further, Delaware courts have consistently held that in setting forth a claim of ineffective assistance of counsel, a defendant must make concrete allegations of actual prejudice and substantiate them or risk summary dismissal.[10] When examining the representation of counsel pursuant to the first prong of the *Strickland* test, there is a strong presumption that counsel's conduct was professionally reasonable.[11] This standard is highly demanding.[12] *Strickland* mandates that, when viewing counsel's representation, this Court must endeavor to "eliminate the distorting effects of

---

[5] *Strickland v. Washington*, 466 U.S. 668, 686 (1984) (quoting *McMann v. Richardson*, 397 U.S. 759, 771 n.14 (1970)); *Marshall v. Rodgers*, 133 S. Ct. 1446, 1449 (2013) (quoting *Iowa v. Tovar*, 541 U.S. 77, 80–81 (2004)).

[6] 466 U.S. 668 (1984).

[7] *Strickland*, 477 U.S. at 687.

[8] *Id.*

[9] *Chaidez v. United States*, 133 S. Ct. 1103, 1107 (2013) (quoting *Strickland*, 477 U.S. at 687–88).

[10] *See e.g., Outten v. State*, 720 A.2d 547, 557 (Del. 1998).

[11] *Albury v. State*, 551 A.2d 53, 60 (Del. 1988).

[12] *Flamer v. State*, 585 A.2d 736, 754 (Del. 1990).

hindsight."[13]

Here, Mr. Pickle makes various allegations unrelated to his representation, including alleging that the victim raped, "physicaly [sic] hurt and mentaly [sic] damaged" him. The only allegation made by Mr. Pickle that might constitute deficient representation is his allegation that Ms. Amalfitano failed to file a motion to suppress his confession, which he argues was the product of intimidation by law enforcement. He also alleges that Ms. Amalfitano did not look at the relevant evidence including the DVD of Mr. Pickle's confession and certain text messages.

In her affidavit, Ms. Amalfitano alleges that such a motion to suppress would be fruitless: on her review of the video, she observed no signs of intimidation. She determined that Mr. Pickle fully understood his rights and what it meant to waive those rights before he spoke with law enforcement. She also alleges that she reviewed all evidence in the case.

Following a complete review of the record, the Court finds that Mr. Pickle's allegations are insufficient to substantiate his claim that his attorney was ineffective. The Court finds counsel's affidavit, which appears consistent in all respects with the record, to be more credible than Mr. Pickle's allegations. Mr. Pickle's account is self-serving and internally inconsistent. Initially, he claims that he confessed to law enforcement because they intimidated him. Shortly thereafter, he alleges that "[s]eeing the police I thought I was being rescued so I unknowingly waiving [sic] my Miranda rights thinking I would get help."

---

[13] *Strickland* 466 U.S. at 689.

The Court finds that Ms. Amalfitano acted reasonably in not bringing a motion to suppress. The Court also finds that Ms. Amalfitano reviewed all evidence in the case and acted reasonably in so doing. Therefore, Mr. Pickle has not demonstrated the first part of the *Strickland* test: defense counsel's representation was not deficient. Mr. Pickle's motion also fails to establish actual prejudice, such as showing that a motion to suppress would likely be successful. For these reasons, Mr. Pickle's first and sixth grounds for postconviction relief are without merit.

## 2. INEFFECTIVE ASSISTANCE OF COUNSEL DURING PRE-TRIAL NEGOTIATIONS

Mr. Pickle's motion makes general allegations that defense counsel did not "understand the elements of the offence with which [Mr. Pickle was] charged," and that she did not adequately communicate with Mr. Pickle.

The Sixth Amendment guarantees defendants the right to the "effective assistance of counsel" during pretrial plea bargaining.[14] A defendant must also "show that the deficient performance prejudiced the defense."[15] When a Rule 61 movant alleges ineffective assistance at the plea bargaining stage, to establish prejudice he must "show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial."[16] It does not require a reviewing court to determine whether the defendant would prevail in the

---

[14] *Hill v. Lockhart*, 474 U.S. 52, 58 (1985).

[15] *Strickland*, 477 U.S. at 687.

[16] *Hill*, 474 U.S. at 59.

10

ensuing trial.[17]

In the context of a plea agreement, ineffective assistance undermines the voluntariness of the guilty plea.[18] Because a guilty plea must be voluntary, constitutionally deficient advice is a ground to overturn it.[19]

Following a complete review of the record, the Court finds that Mr. Pickle's allegations are insufficient to substantiate his claim that his attorney was ineffective. The Court finds counsel's affidavit, which appears consistent in all respects with the record, to be more credible than Mr. Pickle's self-serving claims that his counsel's representation was ineffective. Counsel denies that she did not understand the charges, and provided testimony, which the Court finds credible, establishing that Mr. Pickle was fully informed of the charges against him. Therefore, Mr. Pickle has not demonstrated the first part of the *Strickland* test: defense counsel's representation was not deficient.

Further, Mr. Pickle cannot establish the second part of the test: that he was prejudiced by taking the plea deal. The plea and sentence appear manifestly reasonable. Among other charges, Mr. Pickle was indicted with twenty-six counts of rape in the third degree, which carry a collective maximum penalty of six-hundred and fifty years of level five incarceration. Pursuant to his plea deal, Mr. Pickle was sentenced to only twenty-five years of incarceration—less than four percent of the

---

[17] *Id.*

[18] *See id.* at 56 (citing *McMann v. Richardson*, 397 U.S. 759, 771(1970)).

[19] *Id.*

potential penalty faced. The plea bargain was clearly favorable, particularly in light of the evidence against Mr. Pickle, including his recorded confession. Prior to the entry of his plea, Mr. Pickle acknowledged that he and his attorney discussed the case, and when he entered his guilty plea, he stated he had discussed the deal and that he freely chose to take it. The Court finds Mr. Pickle's unconvincing and general allegations are insufficient to demonstrate ineffective assistance during the plea negotiations.

### 3. VIOLATION OF DELAWARE RULE OF PROFESSIONAL CONDUCT 4.1

Delaware Rule of Professional Conduct 4.1 instructs in pertinent part that "[i]n the course of representing a client a lawyer shall not knowingly . . . make a false statement of material fact or law to a third person."

Here, while Mr. Pickle informs the Court of the duty of an attorney to speak truthfully, he alleges no specific instances in which Ms. Amalfitano was less than candid.

Mr. Pickle's motion further alleges that Ms. Amalfitano "used deception and intimidation to get the defendant to feel helpless with no self-esteem and had a guy help force the defendant to sign the [State's] plea."

In her affidavit, Ms. Amalfinato alleges that the plea colloquy clearly indicates that the plea was knowingly, voluntarily, and intelligently entered, and was not a product of intimidation or threats. However, Ms. Amalfitano did not directly address Mr. Pickle's allegation that deception or intimidation were used to force Mr. Pickle to sign the plea agreement. The Court repeatedly requested that Ms. Amalfitano

12

clarify her response to this allegation, and even held a hearing on November 17, 2017, specifically for Ms. Amalfitano and Mr. Pickle to address this ground for postconviction relief. Despite the Court's efforts, Ms. Amalfitano would not clarify her response. During that same hearing, Mr. Pickle was asked "to speak to [his] Ground 3" for postconviction relief. He provided no details whatsoever of how Ms. Amalfitano or any other individual forced him to sign the plea agreement.

During his initial plea colloquy, Mr. Pickle stated that no one forced or threatened him to enter into the plea. Prior to accepting his plea, this Court found that Mr. Pickle's plea was voluntarily entered without influence of threat or force.

In the absence of clear and convincing evidence to the contrary, a movant is bound by his testimony given in the colloquy establishing that his plea was knowingly and voluntarily entered.[20] The Supreme Court of the United States has held that "the representations of [a] defendant . . . as well as any findings made by the judge accepting the plea, constitute a formidable barrier in any subsequent collateral proceedings. Solemn declarations in open court carry a strong presumption of verity. The subsequent presentation of conclusory allegations unsupported by specifics is subject to summary dismissal, as are contentions that in the face of the record are wholly incredible."[21]

Mr. Pickle has presented no clear and convincing evidence that his plea was unknowingly or involuntarily entered. The allegation that Ms. Amalfitano, assisted

---

[20] *Somerville v. State*, 703 A.2d 629, 632 (Del. 1997).
[21] *Blackledge v. Allison*, 431 U.S. 63, 73–74 (1977).

13

by "a guy" forced him to sign the plea agreement, is so vague and conclusory as to warrant dismissal.[22] Both in writing and at the hearing held concerning this motion on November 17, 2017, Mr. Pickle failed to provide any specific facts as to how he was deceived or intimidated into signing the plea, whether by physical force or threat of force, or what the content of any alleged threats were. Mr. Pickle also provided no details as to where or when the alleged incident occurred. The Court finds Mr. Pickle's third ground for post conviction relief is without merit.

### 4. FAILURE TO CONDUCT PSYCHIATRIC EXAMINATION OF DEFENDANT PURPORTEDLY IN VIOLATION OF "RULE 402"

It is unclear to the Court what Delaware Rule of Evidence 402 has to do with this case. Delaware Rule of Evidence 402 provides that "[a]ll relevant evidence is admissible, except as otherwise provided by statute or by these rules or by other rules applicable in the courts of this State. Evidence which is not relevant is not admissible." In his fourth ground for postconviction relief, Mr. Pickle claims that he suffers from "complex post-traumatic stress disorder also known as developmental trauma disorder." It appears Mr. Pickle's chief concern is that Ms. Amalfitano failed to discover mental health evidence, and, through her failure to do so, he was prejudiced. The Court therefore applies the *Strickland* test, as explained *supra*.

Here, Mr. Pickle offers no authority to suggest that Ms. Amalfinato's representation was deficient for failing to order a psychiatric evaluation, or that such

---

[22] Super. Ct. Crim. R. 61(b)(2) requires the movant to set forth not only the grounds for postconviction relief but also "the facts supporting each of the grounds . . . specified."

14

an evaluation would have impacted his decision to take the plea deal. Rather, at the hearing held November 17, 2017, Ms. Amalfitano informed the Court that when Mr. Pickle went through intake with the Office of Defense Services, he filled out a detailed questionnaire, in which he denied suffering from any mental health conditions, taking any mental health education, or receiving any mental health treatment. Further, Ms. Amalfitano informed the Court that on the video recording of Mr. Pickle's confession his behavior also did not suggest any mental health problems. Therefore, the Court finds that Ms. Amalfitano acted reasonably in not ordering a mental examination, she had no reason to believe that Mr. Pickle had any mental health problems. Additionally, Mr. Pickle did not demonstrate actual prejudice, as he has presented nothing to convince this Court that he does have a mental health condition, the discovery of which would have altered the outcome of this case.

## 5. DEFICIENT PLEA COLLOQUY

Mr. Pickle finally alleges that this Court accepted his plea of guilty without first "addressing the defendant personly [sic] and determing [sic] that the plea is made voluntarily and with an understanding of the nature of the charges and the consequences of the plea." He further characterizes the plea colloquy as a "boiler plate discussion."

Contrary to Mr. Pickle's assertions, the record reproduced above clearly indicates that the Court spoke with Mr. Pickle personally to determine whether his plea was knowing and voluntary. When Mr. Pickle was asked whether he had

reviewed the plea, understood his rights, understood that he was waiving those rights, and was not being threatened or forced to do so, Mr. Pickle answered in the affirmative. Mr. Pickle has presented no argument or authority suggesting that any particular line of questioning was absent from the colloquy or that the colloquy was deficient in any way. Nor does he suggest that any potential variances in the plea colloquy impacted his substantial rights.[23] Mr. Pickle's bare allegation of error, lacking any specificity, assertion of prejudice, or supporting authority, must be summarily dismissed.

## CONCLUSION

For the foregoing reasons, Mr. Pickle's Amended First Motion for Postconviction Relief is DENIED.

IT IS SO ORDERED.

Hon. William L. Witham, Jr.
Resident Judge

WLW/dmh

---

[23] Super. Ct. Crim. R. 11(h) ("Any variance from the procedures required by this rule which does not affect substantial rights shall be disregarded.").