[Cite as *State v. Blackshear*, 2019-Ohio-655.]

IN THE COURT OF APPEALS OF OHIO
SIXTH APPELLATE DISTRICT
LUCAS COUNTY


State of Ohio/City of Toledo                          Court of Appeals No. L-18-1103

      Appellee                                   Trial Court No. TRC-17-18903
                                                                                       CRB-17-10759
v.

Ishmial A. Blackshear                             **DECISION AND JUDGMENT**

      Appellant                                  Decided:   February 22, 2019

* * * * *

David Toska, Chief Prosecutor, and Henry Schaefer,
Assistant Prosecutor, for appellee.

Tyler Naud Jechrua, for appellant.

* * * * *

**MAYLE, P.J.**

## Introduction

**{¶ 1}** Defendant-appellant, Ishmael Blackshear Bey, appeals his conviction in the

Toledo Municipal Court following a bench trial in which the trial court found him guilty

of operating a vehicle while impaired. Bey represented himself at trial. On appeal, Bey contends that the trial court failed to advise him adequately of the disadvantages of proceeding pro se at trial, and therefore, that his waiver of counsel was invalid. Bey also challenges the sufficiency and manifest weight of the evidence against him. After a thorough review of the record, we find that the trial court failed to make a sufficient inquiry to determine whether Bey knowingly, intelligently, and voluntarily relinquished his right to counsel. Accordingly, the judgment of the trial court is reversed, and the case is remanded for a new trial.

### Facts and Procedural History

{¶ 2} On August 27, 2017, Toledo Police Officers George Stauch and Richard Miller were traveling westward on Dorr Street when they received a 911 dispatch of a possibly impaired driver. The call had originated with Brandon Rizzo, a civilian driver, who called 911 after witnessing a truck driving "recklessly" near the intersection of Dorr Street and Secor Road. Rizzo told the 911 operator that the driver was "swerving all over the place, hitting the curbs. He almost took out like four girls crossing the street."

{¶ 3} The two officers located a truck that matched the description that had been provided by the 911 dispatcher. They began following it, and pulled the truck over after they observed what they believed to be a lane violation while turning.

{¶ 4} Officer Miller approached the driver's side window and spoke with Bey, who was driving. Officer Stauch approached the passenger-side window, which was occupied by an unidentified male. On the "dashcam" video of the stop, Officer Miller

2.

can be heard asking for Bey's driver's license and then saying "I hope we're not drinking that beer." After Bey provided his driver's license, the police officers returned to their squad car to call in the license information.

{¶ 5} While communicating with police headquarters, Trooper Kevin Doerle, with the Ohio State Highway Patrol, pulled behind the Toledo Police patrol car. Trooper Doerle was on a general patrol in Lucas County, and the police officers asked if Trooper Doerle wanted to take the lead in the investigation. The trooper agreed, and he and Officer Miller then switched the order of their respective vehicles, such that Trooper Doerle moved directly behind Bey's truck, and Office Miller pulled behind the trooper. Trooper Doerle's vehicle was also equipped with a dashcam.

{¶ 6} Trooper Doerle, who has received specific training on conducting field sobriety tests and identifying indicators of impairment, noticed the strong odor of alcohol coming from the vehicle and observed a blue can in the center console cup holder. Doerle asked Bey how much alcohol he had consumed. Bey said "some." Trooper Doerle requested, and then ordered, Bey to exit the vehicle multiple times. He eventually exited the vehicle, but refused to allow any type of field sobriety test.

{¶ 7} While talking to Bey away from the vehicle, Doerle "still detected the strong odor of an alcoholic beverage." He also noticed that Bey was "swaying slightly;" his eyes appeared "bloodshot and glassy;" and his voice was "thick-tongued." Trooper Doerle placed Bey under arrest for operating a vehicle under the influence of alcohol, and recited "BMV Form 2255," which explains the consequences of refusing to undergo field

3.

sobriety testing, including mandatory license suspension.  Later, at the jail, Trooper Doerle offered to perform a breathalyzer on Bey, but Bey again refused to be tested.

{¶ 8} Bey was charged with violating R.C. 4511.19(A)(1)(a), "Driving while under the influence of alcohol, drugs;" a misdemeanor of the first degree and R.C. 4511.36, "Rules for turns at Intersections," a minor misdemeanor.  Bey was separately charged with possessing "less than" 100 grams of marijuana, in violation of R.C. 2925.11(C)(3)(a), a minor misdemeanor.  The possession charge was subsequently consolidated with the traffic citations.

{¶ 9} On August 28, 2017, at the initial hearing, Bey stated that he did not intend to hire his own attorney.   On September 7, 2017, during a pretrial conference, he told the trial court that it was "possible" that he would represent himself at trial.

{¶ 10} On October 16, 2017, the parties appeared for a pretrial conference.  Bey indicated that he intended to represent himself.  The court stated, "you are entitled to have an attorney throughout this process, and if you cannot afford one and if you financially qualify, the Court would appoint a public defender to represent you.  * * * [Y]ou can hire your own attorney, and I would suggest that you do so [because] it does not appear that you have a particularly good grasp of the legal system." The court also mentioned that he may wish to have an attorney review the evidence that Bey had just received from the prosecutor that morning.  Bey stated, "I wouldn't know till [sic] I look at [the evidence]," and requested a day to consider the issue.  The court granted Bey a

4.

two-day continuance, and stated "take a look at it, and if you want to consider appointed attorney, I can look at it."

{¶ 11} On October 18, 2017, Bey told the court that he decided that he would not be hiring an attorney, and he informed the court that he had filed several motions.  He filed a motion to suppress, arguing that there was no probable cause for the initial stop and that there was no reasonable suspicion to order him out of his vehicle. He also filed a motion relating to certain discovery that he had not yet received from the state.

{¶ 12} Regarding Bey's intention to represent himself, the court stated "I think I mentioned this to you last time.  You have a right to an attorney throughout this process.  If you cannot afford one and you financially qualify, the Court will appoint one for you.  You also have the right to hire your own attorney, but you also have the Constitutional right to represent yourself.  Is it your intention to represent yourself throughout this criminal matter?"  Bey responded "That is."

{¶ 13} The parties then appeared for a January 3, 2018 pretrial hearing, at which time the court denied Bey's motion to suppress and then set a trial date.  The court said to Bey, "[a]gain, I would suggest [that], although you * * * represented yourself well at the Suppression Hearing * * * jury trials are different.  I would again encourage you to hire an attorney, though you are not required to do so.  Any questions?"  Bey had no questions, and the subject of his self-representation was not raised again.

{¶ 14} A bench trial was held on March 13, 2018, and Bey represented himself throughout the proceeding.  The court took the matter under advisement and delivered its

5.

verdict on April 2, 2018. It found Bey not guilty as to the drug possession and turning violation offenses. It found Bey guilty as to the OVI charge. The court sentenced him to serve 90 days in jail, with 87 of the days suspended. In lieu of jail, the court ordered that Bey participate in a three-day driver intervention program. It also imposed a $375 fine, six months of inactive probation, and twelve months of a license suspension.

{¶ 15} Bey appealed, and this court, acting sua sponte, appointed him appellate counsel. Bey asserts two assignments of error for our review.

1. The trial court erred when it convicted Mr. Bey because the evidence presented by the city both lacked the sufficiency to support the conviction and the conviction was against the manifest weight of the evidence presented.

2. The trial court erred when Mr. Bey was never properly informed of his right to counsel, nor was there an acknowledgment by Mr. Bey on the record.

**Law and Analysis**

{¶ 16} We begin with Bey's second assignment of error in which he claims that the trial court did not explain the consequences of his decision to represent himself and that his lack of understanding of those consequences led him to proceed pro se and ultimately to his conviction. Whether a defendant knowingly, intelligently, and voluntarily waived the right to counsel is an issue that we review de novo. *State v. Griffin*, 10th Dist. Franklin No 10AP-902, 2011-Ohio-4250.

6.

{¶ 17} The prosecution of any offense that includes imprisonment as a sentence—whether such offense is classified as petty, misdemeanor, or felony—triggers a defendant's right to counsel. *State v. Wellman*, 37 Ohio St.2d 162, 309 N.E.2d 915 (1974) paragraph one of the syllabus, citing *Argersinger v. Hamlin*, 407 U.S. 25, 92 S.Ct. 2006, 32 L.Ed. 2d 530 (1972).

{¶ 18} A defendant's right to counsel during critical stages of the prosecution is guaranteed by the Sixth Amendment of the United States Constitution, made applicable to the states through the Fourteenth Amendment, and by Article I, Section 10, of the Ohio Constitution. *Gideon v. Wainwright*, 372 U.S. 335, 342, 83 S.Ct. 792, 9 L.Ed.2d 799 (1963); *State v. Martin*, 103 Ohio St.3d 385, 2004-Ohio-5471, 816 N.E.2d 227. The right to counsel, however, "implicitly embodies a 'correlative right to dispense with a lawyer's help.'" *Martin* at ¶ 23, quoting *Adams v. United States ex rel. McCann*, 317 U.S. 269, 279, 63 S.Ct. 236, 87 L.Ed. 268 (1942). The right to represent oneself "is thwarted when counsel is forced upon an unwilling defendant, who alone bears the risks of a potential conviction." *State v. Obermiller*, 147 Ohio St.3d 175, 2016-Ohio-1594, 63 N.E.3d 93, ¶ 26, citing *Faretta v. California*, 422 U.S. 806, 819-820, 95 S.Ct. 2525, 45 L.Ed.2d 562 (1975). Nonetheless, if the accused "is not represented by counsel and has not competently and intelligently waived his constitutional right, the Sixth Amendment stands as a jurisdictional bar to a valid conviction and sentence depriving him of his life or his liberty." *State v. Gibson*, 45 Ohio St.2d 366, 376, 345 N.E.2d 399 (1976), quoting *Johnson v. Zerbst*, 304 U.S. 458, 58 S.Ct. 1019, 82 L.Ed. 1461 (1938).

7.

{¶ 19} For that reason, there is a presumption against finding that a defendant has waived his or her right to counsel, and a trial court has a "serious and weighty responsibility" to determine whether the accused is knowingly, intelligently, and voluntarily waiving the constitutional right to counsel. *Gibson* at 376, quoting *Von Moltke v. Gillies*, 332 U.S. 708, 723, 68 S.Ct. 316, 92 L.Ed. 309 (1948)**.** "To discharge this duty properly in light of the strong presumption against waiver of the constitutional right to counsel, a judge must investigate as long and as thoroughly as the circumstances of the case before him demand. The fact that an accused may tell him that he is informed of his right to counsel and desires to waive this right does not automatically end the judge's responsibility." *Id.* "Although defendant[s] need not [themselves] have the skill and experience of a lawyer in order competently and intelligently to choose self-representation, [they] should be made aware of the dangers and disadvantages of self-representation, so that the record will establish that [they] know what [they are] doing and [their] choice is made with eyes open." (Quotation omitted.) *Faretta* at 835.

{¶ 20} For the waiver of counsel to be valid, a trial court must engage in a colloquy with the defendant to ensure that he or she "has been 'made aware of the dangers and disadvantages of self-representation.'" *Obermiller* at ¶ 43, quoting *Faretta* at 835. "The specific nature of the colloquy varies from case to case, depending on the nature and circumstances of the charged offenses and potential penalties the defendant faces." *Id.*; *see also State v. Johnson*, 112 Ohio St.3d 210, 2006-Ohio-6404, 858 N.E.2d 1144, ¶ 101, quoting *Iowa v. Tovar* , 541 U.S. 77, 88, 124 S.Ct. 1379, 158 L.Ed.2d 209

8.

(2004) (Noting that the United States Supreme Court "ha[s] not * * * prescribed any formula or script to be read to a defendant who states that he elects to proceed without counsel.").

{¶ 21} In *Gibson*, the Supreme Court of Ohio held that a valid waiver of one's right to counsel must be made with apprehension to "the nature of the charges, the statutory offenses included within them, the range of allowable punishments thereunder, possible defenses to the charges and circumstances in mitigation thereof, and all other facts essential to a broad understanding of the whole matter." *Gibson* at 377, quoting *Von Moltke* at 723. Other Ohio courts have noted that a court "should" also explain that the defendant "will be required to follow the same rules of procedure and evidence which normally govern the conduct of a trial." *State v. Furr*, 1st Hamilton Dist. No. C-170046, 2018-Ohio-2205, ¶ 9, quoting *State v. Doane*, 69 Ohio App.3d 638, 646-647, 591 N.E.2d 737 (11th Dist.1990). But, again, "[t]he information a defendant must possess in order to make an intelligent election* * *will depend on a range of case-specific factors, including the defendant's education or sophistication, the complex or easily grasped nature of the charge, and the stage of the proceeding.") *Johnson* at ¶ 101, quoting *Tovar* at 88; *see also Obermiller* at ¶ 43 ("The specific nature of the colloquy varies from case to case.").

{¶ 22} In addition, Crim.R. 44 governs the procedure through which a defendant may waive his right to counsel. The rule provides, in relevant part,

> **(A) Counsel in serious offenses.** Where a defendant charged with a serious offense is unable to obtain counsel, counsel shall be assigned to

9.

represent him at every stage of the proceedings from his initial appearance before a court through appeal as of right, unless the defendant, after being fully advised of his right to assigned counsel, knowingly, intelligently, and voluntarily waives his right to counsel.

> **(B) Counsel in petty offenses**. Where a defendant charged with a petty offense is unable to obtain counsel, the court may assign counsel to represent him. When a defendant charged with a petty offense is unable to obtain counsel, no sentence of confinement may be imposed upon him, unless after being fully advised by the court, he knowingly, intelligently, and voluntarily waives assignment of counsel.

> **(C) Waiver of counsel**. Waiver of counsel shall be in open court and the advice and waiver shall be recorded as provided in Rule 22 [Recording of Proceedings]. In addition, in serious offense cases the waiver shall be in writing.

{¶ 23} Pursuant to Crim.R. 44 and 22, the waiver of counsel must take place in open court, must be recorded, and in cases of serious offenses, the waiver must be in writing. A serious offense "means any felony, and any misdemeanor for which the penalty prescribed by law includes confinement for more than six months." Crim.R. 2(C). A petty offense is defined as "a misdemeanor other than a serious offense." Crim.R. 2(D).

{¶ 24} Here, Bey was charged violating R.C. 4511.19(A)(1)(a), which provides that "[n]o person shall operate any vehicle * * * within this state, if, at the time of the operation, any of the following apply:  [t]he person is under the influence of alcohol, a drug of abuse, or a combination of them."  A violation of Section (A)(1)(a) is a misdemeanor of the first degree.  As a first time OVI offender, Bey was subject to the penalty of not more than six months in prison.  R.C. 4511.19(G)(1)(a).   Therefore, Bey's OVI charge qualifies as a misdemeanor, petty offense and is governed by Crim.R. 44(B) and (C).  *Village of Highland Hills v. Nicholson,* 8th Dist. Cuyahoga No. 100577, 2014-Ohio-4671, ¶ 16; *see also State v. Victor,* 2015-Ohio-5520, 11th Dist. Geauga Nos. 2014-G-3220 and 2014-G-3241, ¶ 31.  And, because the charge was not a "serious offense," Bey's waiver of the right to counsel was not required to be in writing.  *Id.*

{¶ 25} Nonetheless, after reviewing the entire record, we must conclude that Bey did not knowingly, intelligently, and voluntarily waive his right to counsel.  Although Bey clearly and unequivocally asserted his right to represent himself at trial, the trial court had a corresponding "serious and weighty responsibility" to ensure that Bey was making that choice "with eyes open." *Gibson,* 45 Ohio St. at 377, 345 N.E.2d 399; *Faretta* at 835.  As discussed above, the law is clear: a pro-se defendant proceeds to trial "with eyes open" only after he or she is "made aware of the dangers and disadvantages of self-representation." *Obermiller* at ¶43, quoting *Faretta* at 835. Here, that did not occur. Although the trial court repeatedly informed Bey of his constitutional right to counsel and explicitly "encouraged" him to proceed to trial with the assistance of an attorney, the

11.

court failed to engage in any colloquy to ensure that Bey understood the dangers and disadvantages of self-representation. For that reason, we must follow the strong presumption against waiver and conclude that Bey did not knowingly, intelligently, and voluntarily relinquish his right to counsel. *See City of Toledo v. Garmon*, 6th Dist. Lucas No. L-12-1206, 2013-Ohio-4413, ¶24 (Finding that the defendant did not waive her right to counsel because the court "failed to ensure that [she] understood the nature of the charges against her or the possible defense to those charges" and the court "failed to advise [the defendant] of the dangers of self-representation.").

{¶ 26} We therefore sustain Bey's second assignment of error, vacate his OVI conviction, and remand for a new trial where the court must either appoint counsel to Bey, assuming he qualifies, or have the proper colloquy with him to ensure that he is voluntarily, knowingly, and intelligently waiving his right to counsel. *Vill. of Highland Hills* at ¶ 18. Of course, Bey may not be retried for the offenses for which he was already acquitted: marijuana possession and turning violation. *Id.* Finally, in light of our decision with regard to Bey's second assignment of error, we find that his first assignment of error is moot, and we decline to address it. App.R. 12(A)(1)(c).

{¶ 27} Pursuant to App.R. 24, the city is ordered to pay the costs of this appeal.


Judgment reversed.

A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. *See also* 6th Dist.Loc.App.R. 4.

Arlene Singer, J.

Thomas J. Osowik, J.

Christine E. Mayle, P.J.
CONCUR.

_____
JUDGE

_____
JUDGE

_____
JUDGE

This decision is subject to further editing by the Supreme Court of Ohio's Reporter of Decisions. Parties interested in viewing the final reported version are advised to visit the Ohio Supreme Court's web site at: http://www.supremecourt.ohio.gov/ROD/docs/.